[No. 8297.]

GREELEY & LOVELAND IRRIGATION COMPANY V. HUPPE ET AL.

1. IRRIGATION—*Reservoirs—Decree for Storage.* The statute recognizes two classes of appropriations for irrigation, one for ditches diverting water directly from the stream, for immediate use, the other by reservoirs for the storage of water, to be used subsequently (Rev. Stat. c. 72, iv.) (538.)

The storage of the surplus water diverted for irrigation, and not used at the time, cannot be made the basis of an independent decree for storage. (538.)

2. EVIDENCE—*General Statements,* manifestly contrary to the fact are not accepted. (542.)

3. APPEAL AND ERROR—*Rehearing.* Defendant in error who joins error, and in argument directly meets the distinct and plain contentions of the plaintiff in error, will not, at the final hearing, be heard to question, upon petition for rehearing, the jurisdiction of this court upon a ground not before suggested. (548, 549.)

4. SUPREME COURT—*Jurisdiction.* This court has jurisdiction to review a general adjudication decree settling the priorities of the reservoirs upon a particular stream, and this necessarily involves the power to determine whether a reservoir to which a priority has been awarded is entitled to any priority whatsoever. (549.)

*Error to Boulder District Court.* Hon. HARRY P. GAMBLE, Judge.

Mr. CHARLES D. TODD, for plaintiff in error.

Mr. CHARLES W. WATERMAN, Mr. WILLIAM A. JACKSON, Mr. FRED W. STOW, Mr. P. D. NELSON, Mr. HERMAN W. SEAMAN, Mr. FRANK J. ANNIS, and Mr. H. N. HAYNES, special counsel on rehearing, for defendants in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court.

For convenience we will designate the Greeley & Loveland Irrigation Company plaintiff, and defendants in error defendants. At the first adjudication, in 1883, in the District Court of Boulder county settling the relative priorities of ditches for irrigation upon the Thompson river—water district No. 4—decrees were entered awarding the Louden ditch 194 cubic feet, and the Handy ditch 172 cubic feet, of water per second. In 1890 another adjudication was had in this water district by which the priorities of reservoirs for direct storage from the river were settled as follows: Lone Tree reservoir, storage priority No. 1, for 400 million cubic feet; Mariana reservoir, storage priority No. 3, for 200 million cubic feet; Donath Lake reservoir, storage priority No. 2, for 50 million cubic feet. These were the only decreed reservoirs on the river prior to the decree of 1912.

In 1893 the Greeley & Loveland Irrigation Company constructed, and since has owned and operated, the Loveland & Greeley reservoir, known as Lake Loveland, which, since its construction the various water commissioners have recognized and filled, as having the next storage right, or reservoir priority No. 4, while defendants' nineteen reservoirs have not been known or considered by the commissioners. No demand was made for water to fill them, and none was delivered from the river by the commissioners for that purpose. A third statutory adjudication, begun in 1904, resulted in a decree in 1912, upon evidence taken by the referee and filed in court, by which priority numbers were given to the divers reservoirs, commencing with the next consecutive number after Donath Lake priority No. 3 of the former decree. By the decree of 1912, defendants' nineteen reservoirs are given dates, numbers and priorities from the river, superior to and antedating those allowed plaintiff's reservoir, so that instead of having the fourth reservoir priority, as theretofore recognized by the water commissioners since its construction, its storage rights were made junior to those of these nineteen reservoirs, which were placed ahead of it in the decree. The present proceeding to review the decree, pertains to these twenty reservoirs, one belonging to plaintiff, and nineteen to the various defendants. The decree awards the Loveland & Greeley reservoir, in round numbers 620 million cubic feet, and for the nineteen reservoirs an amount aggregating in round numbers 370 million cubic feet is allowed.

1. The Louden and Handy ditches are owned and operated by mutual irrigation ditch companies, the water being divided *pro rata* among the stockholders upon their stock, which stands for and represents the consumers' interest in the ditch and water. Sixteen of the reservoirs in question lie under the Handy, and three under the Louden, all being filled through laterals from the two ditches, which

are in charge of and under the control of a superintendent, who distributes the water to the laterals at their headgates. No question of diligence, use or application, date of priority, or amount of appropriation is involved. Neither is the right to store water diverted on the appropriations of the ditches, as an incident to its use thereafter for irrigation, involved. The only question is whether in this adjudication proceeding, defendants are entitled to reservoir decrees for direct storage from the river, for any of these reservoirs. The decree awards them appropriations with priorities ahead of plaintiff's reservoir, amounting to over 370 million cubic feet, which is an evident injury and damage to plaintiff, unless defendants are entitled to such storage decrees, because the water commissioner is commanded by statute to enforce the decree, in times of scarity, and cannot permit plaintiff to store water in its reservoir, if the decree stands, until after the nineteen reservoirs of defendants have been supplied.

The irrigation acts clearly indicate two classes of appropriations for irrigation, one by ditches diverting water directly from the natural stream for immediate use, the other by reservoirs for the storage of water from the stream, to be subsequently used for irrigation. The statute requires that ditch and reservoir decrees shall be separately numbered, and we are of the opinion that the storage of water decreed to a ditch for direct irrigation cannot be made the basis of an independent storage decree under the statute; neither can the storage of the unused portion of water diverted upon the decreed appropriation of a ditch, for direct and immediate irrigation, constitute the basis of such a decree in a statutory adjudication proceeding such as this, to settle the priorities of reservoirs on the stream, for storage.

We have examined all the evidence taken and filed in court affecting these reservoirs of defendants, and find it

insufficient to warrant the action of the lower court in awarding them decrees. Taken in its entirety and carefully considered and analyzed, it discloses no substantial conflict. The nineteen reservoirs are small natural depressions, or basins, lying along or near laterals from these ditches, through which they are filled, and in some instances the laterals pass through the reservoirs. Water was not diverted from the river and stored in any of these reservoirs during the non-irrigating season, or when it was not diverted on the irrigation decree; on the contrary, the storage occurred when the water was available for irrigation, and when the ditches were actually carrying the decreed appropriations turned out to them by the water commissioner, and their consumers were either using, or entitled to use it for immediate irrigation. There is no substantial evidence that the ditches diverted or carried additional or other water for storage, independent of the decreed ditch appropriation. In fact, it is disclosed by the testimony that when the direct irrigation appropriations were being carried by the ditches, there was no additional carrying capacity in the ditch, which could be utilized for the conveyance of storage water.

The water commissioner is the stream police-officer, and the control and distribution of water through the river headgates into all ditches and canals both for irrigation and storage, is under his direction and supervision. At the beginning of the season, as soon as water was available for irrigation, usually about April first, these ditches called upon him for their appropriations, which he delivered, and when once in the ditches such water as was not used for immediate irrigation the ditch superintendent permitted to be stored in the reservoirs. Such storage usually occurred between the first of April and October, principally in April, May and June, and always after water had been called for and was being diverted on the irrigation appropriations of the ditches, and while they were carrying no other water.

A plausible attempt is made to justify the decree awarding storage priorities to these reservoirs, upon the ground that the water impounded was flood, excess, surplus or waste water, which was flowing in the ditches, or at least that it was different and distinct from the decreed irrigation ditch water. This claim is futile. It is immaterial by what term it is designated, the water which was stored was nothing more nor less than the unused portion of water which the ditch had obtained by virtue of its appropriation for direct irrigation; in other words, it was water diverted on the ditch appropriations, that portion being stored which was not needed at times for immediate use and which could be utilized more advantageously at some future time. It is not unusual to find an unused surplus in ditches during the irrigating season. It is a very common occurrence. In their practical operation all irrigating ditches at times carry such water, and should we concede the consumers' right to temporarily store it, as an incident to future use— a question which we do not here determine—it does not follow that such storage may be made the basis for obtaining storage decrees. A storage right, in this kind of a proceeding, by which a reservoir is filled, to be legally incorporated in a decree, must be established upon a basis wholly independent of, and disconnected from any irrigation right decreed the ditch by means of which the reservoir is filled.

The water commisisoners never delivered water for storage in these reservoirs, were not asked to do so, and did not know that water was stored in them, or that storage rights were claimed for them, independent of the ditch appropriations. They filled the three reservoirs having decrees, in the order of their priorities, and recognized and filled Lake Loveland as the fourth in priority. These four were the only reservoirs on the stream for which any claim was made to the water commissioners for storage rights, or for which a demand for storage water was recognized. If

any of these other reservoirs ever acquired any storage rights which were independent of, and not based on, the irrigation appropriations of the ditches, it is singular that no demand was ever made upon the water commissioners for storage water to fill such reservoirs. They had control over the water in the river for storage and irrigation purposes, and of the river headgates. They knew the purpose for which water was delivered into the ditches, and it is unbelievable that these ditches were carrying water diverted for direct storage, other than the irrigation appropriations of the ditches, without the knowledge or consent of the commissioners, or without their being called upon to furnish storage water. The evidence fails to disclose that any commissioner ever turned water out of the river, to any of these defendants, for storage in the reservoirs in question, or was requested to do so; on the contrary, it shows the officers turned the water into these ditches only upon their decreed appropriations for direct irrigation.

Some four or five of the sixteen reservoir claimants under the Handy have contracts with the ditch company providing for the conveyance to their reservoirs of eight cubic inches of water per second, upon each share of ditch stock owned or controlled by the claimant, so long only as he remains a stockholder, which, it is said, entitles them to independent storage decrees from the river. The reservoirs of these claimants were filled at the same time, in the same manner, from the same source, and with the same character of ditch water, as the other reservoirs. They all stood upon the same basis, so far as their storage rights were concerned, whether they had contracts or not. The water when called for was turned in by the commissioner on the irrigation decrees, not to supply reservoir appropriations as distinguished from ditch decrees, but to supply the appropriation of the ditch for irrigation. In other words the ditch decrees in all instances were used to pro-

cure the delivery of water into the canal, and after it was diverted from the stream, such portion as was not needed and used for immediate irrigation was stored by those fortunate enough to have reservoirs. The storage in all the reservoirs, under both ditches, was of the same general character, and arose from an excess flowing in the ditch, occasioned by the non-use for immediate irrigation of all the water diverted by the ditch upon its decreed appropriation. And again we say that in a statutory reservoir adjudication—as distinguished from an adjudication for irrigation ditches—to settle the relative priorities of reservoirs diverting water from a natural stream for storage, a claimant cannot acquire for a reservoir a storage decree based upon a diversion of a ditch appropriation for irrigation, which is at the time of storage unused for immediate irrigation. *Windsor Co. v. Lake Supply Co.*, 44 Colo. 214-233, 98 Pac. 729; *Finley v. Cache la Poudre Co.*, 44 Colo. 234, 98 Pac. 173.

The three reservoirs under the Louden are filled from laterals used by numerous consumers. No water was specifically diverted from the river into the ditch for the express purpose of directly filling these reservoirs, and independent of the appropriation of the ditch. Water was turned into it by the commissioner, upon its decree, just as early in the spring as it could be obtained, and after being diverted, what was not used for immediate irrigation was turned out of the ditch by the superintendent, into the laterals, and stored in the reservoirs. There was no cross examination of witnesses regarding these three reservoirs, the evidence is very meager and consists principally in generalities as: "during the flood season the reservoirs were filled from the surplus and storage water flowing in the river." We are not obliged to accept such generalities. This stored water was diverted into and carried through an irrigating ditch having a decreed appropriation for irrigation, during the irrigating

season, after the water had been called for by the ditch, and while the water commissioner was exercising his authority and control over the waters of the stream, and when the superintendent was in charge of the ditch.    Under such circumstances, before these claimants could obtain independent storage decrees for their reservoirs, based upon the water stored, they had the burden of establishing, as a basis for the decrees, that the water stored was specifically diverted from the river for that express purpose, independent of and separate and distinct from the direct irrigation water, at a time when the ditch was not carrying its decreed appropriation, and was being used in the capacity of a carrier for the specific purpose of filling the reservoirs.

The case is reversed and remanded with directions to the lower court to cause so much of the decree to be redrafted or rewritten as may be necessary to eliminate therefrom the nineteen reservoirs of defendants, and award to Lake Loveland reservoir priority No. 4.

*Reversed and remanded with directions.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE SCOTT concur.

*On Petition for Rehearing.*

GARRIGUES, J., delivered the opinion of the court.

Plaintiff claimed in the court below that the twenty-three reservoirs involved herein, of defendants in error, were not entitled to storage priorities, and moved to exclude them from the recommended and final decree, upon the ground that they had made no direct independent appropriation from the river for storage, but had only stored the ditch water diverted from the river by the ditches, upon their decreed ditch appropriations, and it asked that the claims filed by the claimants of these reservoirs, defendants in error, be dismissed out of court.    This motion was denied, and March 18, 1912, the court entered a final decree settling

the date and priority number of the reservoirs here involved as follows:

| Name of Reservoir. | Priority No. | Date. |
|---|---|---|
| Smith Reservoir | 6 | Feb. 27, 1881 |
| Wilson Reservoir | 7 | Apr. 1, 1881 |
| Cemetery Reservoir | 8 | July 15, 1881 |
| Welch Reservoir No. 1 | 9 | Oct. 1, 1881 |
| Welch Reservoir No. 2 | 23 | Nov. 25, 1888 |
| Welch Reservoir No. 5 | 24 | Nov. 25, 1888 |
| Welch Reservoir No. 1) | | |
| Welch Reservoir No. 2) 1st Enl. | 31 | Apr. 17, 1902 |
| Welch Reservoir No. 5) | | |
| Welch Reservoir No. 3) as one | 37 | Feb. 1, 1904 |
| Welch Reservoir No. 4) | | |
| Huppe Reservoir | 11 | May 22, 1882 |
| Sunny Slope Reservoir | 12 | July 1, 1882 |
| Fairport Reservoir | 13 | July 10, 1882 |
| Strever Reservoir | 14 | Aug. 10, 1882 |
| Hummel Reservoir | 15 | Nov. 20, 1882 |
| Berthoud Reservoir | 16 | Dec. 1, 1882 |
| De France Reservoir | 17 | Mar. 19, 1883 |
| Coleman Reservoir | 18 | Apr. 1, 1883 |
| Klein Reservoir | 19 | May 1, 1883 |
| Foster & Motz Reservoir | 20 | Nov. 1, 1884 |
| Loveland Lat. Lake Reservoir | 21 | Apr. 1, 1885 |
| Loveland & Greeley Reservoir | 26 | Jan. 14, 1893 |
| Fagan Reservoir | 28 | Nov. 1, 1897 |
| Loveland Reservoir | 29 | Sep. 15, 1898 |
| Rist & Benson Reservoir | 35 | Apr. 26, 1903 |
| McCormick Reservoir | 36 | May 27, 1903 |

All the defendants in error embraced, in the aggregate, 19 claimants owning 23 reservoirs which we inadvertently in our former opinion spoke of as the 19 reservoirs of de-

fendants, instead of the 23 reservoirs of the 19 claimants. This inaccuracy is wholly immaterial, but in this respect the opinion will be modified and corrected.

March 7, 1914, plaintiff filed in the court below its petition and statement for review in the Supreme Court, stating among other things that at no time had any of the reservoirs of defendants in error been independent appropriators of water, for storage, from the river, but that the water consumers from the Handy and Louden ditches had stored in these reservoirs the decreed appropriations of the ditches for direct irrigation, at such times as the ditches were carrying the decreed ditch water only, and that the reservoirs were not entitled to storage decrees based thereon; that the owners of these reservoirs who should be made defendants in error, were: Herman Huppe, Hugo Huppe and Henry Huppe, owners of the Huppe reservoir; T. C. Bunyan, owner of the Hummel reservoir; L. G. Strever, George W. Wilson and C. L. Wilson, owners of the Strever reservoir; S. J. Wilson, owner of the Wilson reservoir; Robert T. Foster and George C. Motz, owner of the Foster and Motz reservoir; Lovilo Fagan, owner of the Fagan reservoir; W. H. McCormick, owner of the McCormick reservoir; Jacob Klein, owner of the Klein reservoir; Francis W. Loveland, owner of the Loveland Lateral Reservoir; Allison H. De France, owner of the DeFrance reservoir; William K. Coleman, William M. Lyons, Joseph L. Noble and Herbert Nichols, owners of the Coleman reservoir; The Handy Ditch and Reservoir Company, a corporation, (Successors to the Handy Ditch Company mentioned in said decree), owners of the Welch reservoirs; The Loveland Lake and Ditch Company, a corporation, owner of the Loveland reservoirs; W. T. W. Smith, owner of the W. T. W. Smith reservoir; The Sunny Slope Reservoir Company, a corporation, owner of the Sunny Slope reservoir; W. H. Turner, owner of the Town of Berthoud reservoir; The Rist and Benson Reser-

voir Company, a corporation, owner of the Rist and Benson reservoir; The Fairport Reservoir and Ditch Company, a corporation, owner of the Fairport reservoir; The Cemetery Lake Reservoir Company, a corporation, owner of the Cemetery Lake reservoir, and prayed that an order be entered allowing a review by the Supreme Court of the findings and decrees of and concerning all of said reservoirs, and that plaintiff might join all the claimants thereof as defendants in error for the purpose of this review. After hearing the petition, the court entered an order allowing a review against all the owners of these reservoirs, and specifically naming them as appellees.

Plaintiff assigned errors on the allowance of each decree awarded to the reservoirs of all the defendants. These are practically the same in each instance, the one against the Rist and Benson reservoir being as follows:

"The court erred in overruling the exceptions and objections of the plaintiff in error made concerning the Rist and Benson reservoir, owned by the Rist and Benson Reservoir Company, to which ruling plaintiff in error duly excepted; and the court further erred in making any finding or decree awarding any priority to said reservoir, and in rendering any decree in favor of said reservoir, for that it appears from the evidence herein that said reservoir was not an independent appropriator of water from the river, nor had it ever been filled as such, but that any water stored therein by the owner thereof was received from water diverted by the Louden ditch under its decreed appropriations for direct irrigation, and not for storage, whereby no appropriation for storage has been made, and the court erred in entering a finding and decree in its favor, to which plaintiff in error then and there duly excepted."

March 13, 1914, a writ of *scire facias* issued out of this court, directed to, among others, the Handy Ditch and Reservoir Company, owner of the Welch reservoirs, priorities

Nos. 31 and 37; Lovilo Fagan, owner of the Fagan reservoir, priority No. 28; the Loveland Lake and Ditch Company, owner of the Loveland reservoir, priority No. 29; The Rist and Benson Reservoir Company, owner of the Rist and Benson reservoir, priority No. 35; and W. H. McCormick, owner of the McCormick reservoir , priority No. 36. In May, 1914, the Rist and Benson Reservoir Company, Lovilo Fagan, W. H. McCormick, the Loveland Lake and Ditch Company, and the Handy Ditch Company, each entered their written appearance, and acknowledged service of the *scire facias*. August 7, 1914, plaintiff filed its brief and argument of 57 pages devoted wholly to the assignment of error which had been its former contention in the court below, that no priority whatsoever should have been decreed to any of the reservoirs owned by any of the defendants in error, and specifically challenged the order of court awarding any decree to any of these reservoirs, and insisting, as it had done in the court below, that they should be stricken or excluded from the decree. Each and all of the defendants thoroughly understood plaintiff's position and contention, that none of the reservoirs were entitled to decrees. In December, 1914, The Rist and Benson Reservoir Company, Fagan, McCormick, The Loveland Lake and Ditch Company, and The Handy Ditch and Reservoir Company, among others, filed briefs and arguments in answer to plaintiff's brief and contention, in which they joined issue upon, and attempted to meet the challenge of plaintiff, and insisted their reservoirs were entitled to independent and distinct reservoir decrees.

It will be noticed from the tabulation, that the Greeley and Loveland reservoir belonging to plaintiff in error, is given priority No. 26, while these five defendants in error are given six junior priorities as follows, to-wit:  Fagan reservoir, priority No. 28; Loveland reservoir, priority No. 29; Welch reservoirs 1, 2 and 5, first enlargement, priority

No. 31; Rist and Benson reservoir, priority No. 35; Mc-Cormick reservoir, priority No. 36; Welch reservoirs 3 and 4, as one, priority No. 37.

These five defendants in error now for the first time, on petition for rehearing, insist that plaintiff is not and cannot be aggrieved or injuriously affected by these six junior reservoir decrees, therefore, they say, the court is without jurisdiction, upon error, to review the decretal orders awarding the six reservoir priorities, junior to plaintiff, which, they contend, no senior claimant can assail upon review, and for the first time they now ask that the writ of error as to them, be dismissed. The motion, even if well taken, comes too late. These defendants each knew plaintiff contended in the court below that they were entitled to no decrees. The issue there was marked and well defined; there was no other controversy before the court. A writ of error was sued out which challenged their right to any decree; they accepted service, entered their appearance and willingly accepted the challenge without objection. The opinion of the court being against their contention, they now, for the first time, upon petition for rehearing, say plaintiff is not aggrieved or injuriously affected by the decree, therefore this court is without jurisdiction in the premises. This claim is based upon section 27, laws of 1881, page 156, which in substance provides: Any party representing a reservoir affected by any portion of the decree, by which he may feel aggrieved, may have an appeal to the Supreme Court, and, in such case, the party desiring the appeal shall be the appellant, and the parties representing any one or more reservoirs, affecting in common adversely the interest of appellant, shall be the appellees. The appellant shall file a verified statement in writing in the District Court showing that appellant claims a valuable interest in the reservoir, stating its name, affected by some portion of the decree, also the names of the reservoirs, which by

the decree derive an undue advantage in respect of priority, as against that represented by appellant; also setting forth the names of the parties claiming such other reservoirs, affected in common by the decree adversely to the interest of appellant, and praying that an appeal be allowed against such other parties as appellees. If the court on examination finds the statement to be in accordance with the statements of claim filed by the parties named as appellees, he shall approve the statement and make an order allowing the appeal, showing the names of the appellant and appellees, with the names of the reservoirs claimed by the appellant and appellees as shown by their several statements of claim filed before taking of testimony and fix the amount of the appeal bond.

We do not believe this court is without jurisdiction either of the subject matter or of the parties. Jurisdiction over the person was conferred by appearance. Upon review of a general adjudication decree settling priorities of the reservoirs upon the stream, this court certainly has jurisdiction over the subject matter which necessarily embraces the power to determine whether a reservoir is entitled to any decree at all. Defendants in error being before the court and joining voluntarily in the issue, this court has jurisdiction to order the decree corrected by omitting therefrom a reservoir which is entitled to no decree. The reservoirs of defendants in error are all upon the same basis with regard to being filled by water decreed to ditches, which we said could not be made the basis for obtaining decreed reservoir appropriations, direct from the river, under the statute providing for a general adjudication of reservoir priorities. To this opinion we still adhere. To refuse 17 of these reservoirs decrees, which we allow to six, when they are all in the same class and condition, and stand upon the same footing and basis, would at least be inconsistent. What the court would have done had the ques-

tion now raised been properly and seasonably presented, we are not called upon to determine. Defendants now for the first time upon petition for rehearing, having joined in error and filed briefs, cannot move to dismiss the writ of error upon grounds never before raised or called to our attention. Litigation must end somewhere.—*Weil v. Nevitt*, 18 Colo. 11, 31 Pac. 487; *Orman v. Ryan*, 25 Colo. 383, 55 Pac. 168; *Nix v. Miller*, 26 Colo. 211, 57 Pac. 1084; *Lamar Canal Co. v. Amity Co.*, 26 Colo. 379, 58 Pac. 600, 77 Am. St. Rep. 261; *Durango v. Chapman*, 27 Colo. 170, 60 Pac. 635; *Morgan v. King*, 27 Colo. 542, 63 Pac. 416; *Clipper M. Co. v. Eli M. & L. Co.*, 29 Colo. 388, 68 Pac. 286, 64 L. R. A. 209, 93 Am. St. Rep. 89; *U. P. R. R. Co. v. Postal Co.*, 30 Colo. 146, 69 Pac. 564, 97 Am. St. Rep. 106.

Defendants ask that the case be remanded to the lower court with instructions that they be allowed to introduce evidence regarding certain alleged prescriptive rights. All the former opinion decides is that the impounding of ditch water diverted into a canal upon the ditch's decree for direct irrigation cannot be made the basis for obtaining an independent and separate storage decree. In a special adjudication proceeding under the statute to settle the right upon the stream of the various reservoirs for storage use, acquired by priority of appropriation, the jurisdiction of the court is confined to a determination of the relative priorities of the reservoirs, and its decree must be based upon priority and not upon prescription. It is also asked that we remand the case generally for the taking of further testimony by defendants in error. This we cannot do. The first referee was appointed by the trial court in June, 1904, and began taking evidence in July, 1904. The matter remained open in court until March, 1912, when the final decree was signed, affording over seven years for the taking of testimony, giving defendants every opportunity to submit all their facts and evidence to the court.

Our attention has been called to the fact that certain reservoirs were awarded priorities senior to No. 26, regarding which there is no controversy, and the owners thereof are not parties to this review, to-wit: Boulder and Larimer Co., reservoir priority No. 4, first enlargement, priority No. 5, second enlargement, priority No. 25; Culver reservoir, priority No. 10; Rockwell reservoir, priority No. 22. It appears these reservoirs are located on the Little Thompson, a tributary which empties into the Thompson below all the ditches and reservoirs, so what we said in the former opinion about plaintiff's reservoir being entitled to priority No. 4 on the Thompson, really makes no material difference; but inasmuch as the decree must be rewritten, the inaccuracy may be corrected.

The petition for rehearing will be denied and the cause remanded to the lower court with directions to re-write the decree of 1912, and exclude therefrom all the reservoirs of all the defendants in error involved in this review, which are held to be without right to reservoir decrees, and to redraft the decree in accordance with the views herein expressed.

Petition for rehearing denied.

Decided December 6, A. D. 1915. Rehearing denied March 6, A. D. 1916.