## No. 10,939.

### GREELEY AND LOVELAND IRRIGATION COMPANY, ET AL. v. HANDY DITCH COMPANY, ET AL.

Decided June 15, 1925. Rehearing denied July 6, 1925.

Water adjudication proceeding.

### *Judgment Reversed.*

1. WATER RIGHTS—*Adjudication—Special Proceeding.* The proceedings authorized by statute for the adjudication of priorities of right to the use of the public waters of the state, are special.

2. *Adjudication—Notice.* Upon the giving of the statutory notice, all water users in a district become constructively parties to an adjudication proceeding.

3. *Adjudication—Jurisdiction.* The court acquires full jurisdiction over the persons, claims, and contentions of all parties appearing in an adjudication proceeding.

4. *Adjudication—Res judicata.* An adjudication decree is res judicata between all contending parties appearing and submitting their respective claims.

5. *Adjudication—Review.* A party to an adjudication proceeding is entitled to a re-argument or review only upon good cause shown, and within the statutory limit.

6.     *Adjudication—Review.* When parties to an adjudication have had their rights determined and embodied in a decree which is carried to the Supreme Court for review, the judgment of the latter on the law and facts is final, and the trial court is without further jurisdiction over the matters so litigated except to comply with the mandate of the reviewing court.

7.     *Decree—Review.* On writ of error to review an adjudication decree, when any part of the decree is reversed, and where practicable, the Supreme Court shall make and direct the entry of a proper amended decree.

8.     *Adjudication Statutes—Purpose.* Adjudication statutes are primarily for the purpose of adjudicating and settling all questions concerning priorities of right to the use of water.

*Error to the District Court of Boulder County, Hon. Neil F. Graham, Judge.*

Mr. C. D. TODD, for plaintiff in error.

Mr. HARRY N. HAYNES, Mr. RALPH L. DOUGHERTY, Messrs. STOW & STOVER, Mr. P. D. NELSON, Mr. W. K. LILLEY, for defendants in error.

*En banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THIS case is here for the second time. *Greeley and Loveland Irrigation Co. v. Huppe, et al.,* 60 Colo. 535, 155 Pac. 386.

In 1904, a statutory adjudiction of priorities of right to the use of water for irrigation was commenced in water district No. 4. On notice and evidence taken, it resulted in a decree in 1912, to which the litigants in this case or their privies were parties. It came before us for review in the Huppe Case, supra, and was remanded with directions to re-write the decree. The defendants in error, Huppe, et al., petitioned this court for a rehearing and at the same time asked that they be permitted to take further testimony, under R. S. 1908, sec. 3318, C. L. 1921, sec.

1789. This was denied. *Greeley and Loveland Irrigation Co. v. Huppe, supra.*

The lower court caused the 1912 decree to be re-written as directed, but thereafter permitted further testimony resulting in a new decree as to eight out of twenty-three reservoirs, at variance with the 1912 decree as re-written.

The plaintiff in error in the former case, again brings error, with other water users and asks to have the status of the decree restored as re-written pursuant to our directions in the Huppe case.

The above section reads as follows:  "The district court, or judge thereof in vacation, shall have power to order, for good cause shown, and upon terms just to all parties, and in such manner as may seem meet, a reargument or review, with or without additional evidence, of any decree made under the provisions of this act, whenever said court or judge shall find from the cause shown for that purpose by any party or parties feeling aggrieved, that the ends of justice will be thereby promoted; but no such review or reargument shall be ordered unless applied for by petition or otherwise within two years from the time of entering the decree complained of."   R. S. 1908, sec. 3318, C. L. 1921, sec. 1789.

1. We consider first the application of the above section to the proceedings in the lower court prior to the Huppe decision:  These proceedings, authorized by statute for the adjudication of priorities of right to the use of the public waters of the state, are special.  The district court of the water district in which such statutory proceedings may be initiated has full and exclusive original jurisdiction of the subject matter.  Upon the initiation of the proceedings and the giving of notice as provided, all water users in the water district have constructive notice of the pendency of the proceedings and constructively are parties thereto, and the court is given constructive jurisdiction of the persons.

Upon claimants of ditches, reservoirs or other such works appearing in such proceeding making claim or contest-

ing the rights of other claimants, the court acquires actual and full jurisdiction of their persons, their claims and contentions for all purposes of such proceeding. Upon such appearance, the jurisdiction of their persons, claims, and contentions is as full and complete as that acquired upon due service of summons and appearance in the ordinary action.

When the court acquires such full jurisdiction of the persons for the purpose of determining the priority rights of their ditches and reservoirs, the decree entered is res judicata between contending parties so appearing and submitting their respective claims, to the same extent as judgments and decrees in ordinary actions tried in due course.

As the proceedings are of a special character and the jurisdiction of the persons of the several water users in the water district, except when appearance is made, is dependent generally upon the posting and publishing of the general notice, it was no doubt deemed advisable and necessary to the end that litigation might be ended, to provide a reasonable time after the entry of a decree within which claimants in the district not having actual notice of the proceedings, should have their "day in court", i. e., an opportunity to be heard. The legislature, therefore, enacted as a part of the adjudication scheme what is now section 1789 C. L. 1921, above quoted, fixing a limit of two years after the entry of the decree within which time for *good cause shown,* the decree might be re-argued or reviewed with or without further testimony. We have said that the necessity for this section was to provide in this special proceeding, when jurisdiction of the person is dependent upon constructive service, a day in court for those claimants within the same water district and not having had actual notice, but after which time their mouths would be closed. The section is also broad enough to allow the claimants appearing to have a re-argument and review *for good cause* shown.

It is apparent that a claimant that did not have actual notice of such proceeding and was not guilty of neglect in respect thereto, would, under such showing of no actual notice have the required "good cause shown" for such review, but what would constitute "good cause" for thus reviewing the decree at the instance of parties who appeared and had their contentions and differences adjudicated, or who had actual notice and full opportunity to do so, must generally be determined on substantially the same basis as to what constitutes good cause for re-argument and review of a judgment or decree in other actions. The section referred to does not indicate that any other or special meaning is given to the term "good cause." We realize, but do not decide, that material matters arising subsequent to the decree, on a showing based upon the equitable grounds of fraud, accident, or mistake or denial or want of an opportunity to present their proofs and the like, might constitute good cause. No such situation is presented here, for, as we said nine years ago in the same case, the defendants in error knew what the contentions of plaintiff in error were. "The issue there was marked and well defined. There was no other controversy before the court." 60 Colo. 535, 548.

It is not the purpose of the section quoted to permit the review of questions of law, or of fact, which were the subject of contentions between parties appearing in the proceeding and then fully presented, or which the parties so appearing then had full opportunity to present for determination. In the instant case, as shown in our former opinion, the referee was appointed in June, 1904, and the taking of testimony began July, 1904, and the proceedings remaining open until March, 1912, regarding which this court then said: "affording over seven years for the taking of testimony giving defendants their opportunity to submit all their facts and evidence to the court". The rights of these parties to have reservoir decrees under the facts shown were fully presented, considered, and determined by our former order. These par-

ties so appearing then had their "day in court". The judgment of this court on the law and facts was final. We then said: "litigation must end somewhere". This is true now, as then. It is clear that the judgment of this court upon the subject matter and between the parties there submitting themselves to its jurisdiction and their privies is res judicata. The subsequent presentation of the matter which this court is now asked to consider, which matters it is now claimed controvert or tend to disprove the adjudicated facts, cannot be heard to overthrow such adjudication, nor do they constitute "good cause" within the meaning of such section 1789. Nor do they come within any doctrine in law or equity justifying such review. The representatives of the twenty-three reservoirs to which reservoir decrees were denied by our former judgment had their day in court, and none of them have made any showing justifying a review or reargument.

2. When the case comes to the supreme court on writ of error, jurisdiction over the persons and subject matter acquired below continues here. Without it, the supreme court cannot function; but with such jurisdiction, this court may freely exercise its inherent, constitutional, and statutory powers and duties.

Section 2, article 6 of our Constitution reads: "The supreme court, except as otherwise provided in this Constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state, and shall have a general superintending control over all inferior courts, under such regulations and limitations as may be prescribed by law."

If the supreme court did not have a general superintending control over all inferior courts, its labors would be speedily ended; litigants would be deprived of their right of review by the higher court, and its opinions and orders would be wholly unenforceable. The statement of this obvious truth would seem unnecessary but for the fact that it has been disregarded by defendants in error. The new decree which they now seek to have approved, is directly founded upon a violation of our former man-

date. To say that our order was complied with by the expedient of re-writing the decree as directed and then, against our order, taking evidence and making a new decree contrary to the one directed by us, is but a circuitous route of disobedience, leading toward the same goal, that of setting our mandate at naught and destroying its power.

The water adjudication statute of 1881, contains this clause: "The supreme court, in all cases in which judgment is rendered, and any part of the decree appealed from is reversed, and in which it may be practicable, shall make such decree in the matters involved in the appeal as should have been made by the district court, or direct in what manner the decree of that court shall be amended." L. 1881; p. 158, sec. 31, R. S. 1908, sec. 3312.

On writ of error to review the decree of the lower court, the same principle applies. The framers of the adjudication statute but saw fit to emphasize in this section an inherent right of the supreme court, exercisable at all times and employed in our former decision in 60 Colo. 535.

It has been suggested that the petition for a rehearing or re-argument addressed to this court in the case reported in 60 Colo. 535, was like any ordinary petition for a rehearing in an appellate court of its own decision, and not equivalent to a petition for re-argument and review under C. L. 1921, sec. 1789. The refusal of this court to permit further evidence, based on either ground, would be sufficient and final, but the record in the case when here in 1916 shows that defendants in error based their petition for re-argument and review on both grounds. The above section was there quoted and relied upon. The request so made, to take additional evidence under the statute, was argued, submitted, and denied. This court's refusal on such grounds therefore became the law of the case, to be followed by the lower court. The parties thereto and their privies were concluded by the decision.

It is argued that defendants in error did not, in the

language of the statute, "feel aggrieved" until after the decision in the supreme court. This may be true, but unhappily there is no solace for an adverse ruling in a court of last resort, nor is such decision "good cause" for reargument and rehearing below.

From the beginning, the adjudication statute was and is primarily "for the purpose of hearing, adjudicating *and settling* all questions" concerning such priorities. L. 1879, p. 99, sec. 19; R. S. 1908, sec. 3276; C. L. 1921, sec. 1752. The title of the act of 1881 is "To make further provision *for settling* the priority of rights to the use of water for irrigation in the District and Supreme Courts, and for making record of such priorities," etc. L. 1881, p. 142. The 'liberal construction of the act contended for does not go to the extent of leaving questions open and unsettled with no definite terminus, after the parties have had their day in court, and no reargument or review may be had in the district court of a supreme court order, either with or without additional evidence, unless expressly permitted in the order, and least of all when it is expressly refused.

The judgment and decree of the trial court is reversed, with instructions to reinstate the decree of June 29, 1916 made pursuant to the former mandate of this court, as set forth in *Greeley and Loveland Irrigation Company v. Huppe et al.,* 60 Colo. 535, 155 Pac. 386, and in conformity with this opinion.

MR. JUSTICE BURKE, MR. JUSTICE DENISON and MR. JUSTICE SHEAFOR dissent.

MR. JUSTICE BURKE dissenting: I regret my inability to agree with the majority. I think the entire evidence before the trial court supports its decree. The opinion does not touch that important question. If my view is correct that decree ought to stand for "the ends of justice will be thereby promoted." The opinion in the Huppe Case makes no reference to the statute. By no known

rule then can it be held to construe that statute. The statute confers the right to grant re-arguments and reviews upon the district court only. If a motion under it was addressed to this court it was filed in the wrong forum. If this court entertained such a motion it reached beyond its jurisdiction. If our decree in the Huppe Case was not ordered entered under the provisions of the adjudication act we had no power to order it. If it was then it is covered by the statute in question. If, as the majority opinion seems to hold, "good cause" as used in the statute is limited to causes which would theretofore justify a new trial, then the only effect of the statute is to extend the time for such motions in adjudication proceedings to two years and there is much superfluous language in the act. Questions settled by judgments do not become res adjudicata until the judgments become final. The legislature, not this court, is empowered to say when and under what circumstances a judgment becomes final. *People v. Richmond,* 16 Colo. 274, 283, 26 Pac. 929; *Dismukes v. Stokes,* 41 Miss. 430, 433. It may even permit new trials as a matter of right without cause and formerly did so in this state. L. 1887, p. 177 § 272.

Under the statute here in question judgments in water adjudications do not become final as against the statute in question until two years from the date of their entry.

No question of the application of the statute to the proceedings in the Huppe Case prior to that decision, or its application to parties not served or appearing, is involved in the instant case. Neither is the question of the method of acquiring jurisdiction in adjudication proceedings, nor the application of the term "good cause" to points of law. All these portions of the opinion are irrelevant.

I think the judgment should be affirmed, and am authorized to say that Mr. Justice Denison and Mr. Justice Sheafor join in this dissent.