Lopez, J.
1. FACTS
The undisputed facts are as follows. The plaintiff, Lina E. Cronin, is an 87-year-old woman, who currently resides in County Manor Nursing Home in Newburyport, Massachusetts. The defendant, the Division of Medical Assistance (“DMA”) is a state agency within the Executive Office of Health and Human Services. The defendant, the Commissioner of the DMA (“Commissioner”) is charged with the supervision, direction and control of the DMA.
In August 1994, Mrs. Cronin executed The Lina B. Cronin Irrevocable Trust (the “Irrevocable Trust”) naming her daughter, Olivia A. Waterhouse, as Trustee. The applicant retamed an income-only interest in the Irrevocable Trust and named her daughter and her daughter’s issue as beneficiaries. Trust principal may not be paid to Mrs. Cronin.
Also in August 1994, the applicant’s daughter, Olivia A. Waterhouse, executed the L.E.C. Realty Trust (the (“Realty Trust”) naming the Irrevocable Trust as a 40 percent beneficiary and herself a 60 percent beneficiary. Mrs. Waterhouse is the sole trustee of the Realty Trust, and has the power to revoke or amend the trust with the approval of beneficiaries, namely, herself individually and herself as trustee of the Irrevocable Trust. Mrs. Cronin then transferred her home to her daughter’s Realty Trust reserving a life estate for herself. The home was subsequently sold and the Realty Trust now holds the remaining proceeds from the sale.
Mrs. Cronin filed an application with the defendant on October 6,1998, seeking Medical Assistance for the costs of her nursing home care as of September 1, 1998. The defendant denied her application in a notice dated October 30, 1998, including the assets of the Realty Trust as a “countable asset” to Mrs. Cronin and, therefore, determining that she had assets in excess of program limits. Mrs. Cronin then made a timely appeal on November 10, 1998, upon which, a full and fair hearing was held on January 11, 1999. The Hearing Officer issued a decision on April 12, 1999, revoking the DMA’s denial notice, and approving Mrs. Cronin’s application for Medical Assistance.
In a letter dated April 20, 1999, the then Commissioner of the DMA, Bruce Bullen, notified Mrs. Cronin of his intent to consider ordering rehearing of the appeal, and in a letter dated May 7, 1999, he ordered a rehearing to be held on May 17, 1999. At the rehearing, Mrs. Cronin’s representative objected to the validity of the rehearing order. After noting the objection, the Director of the Board of Hearings then held another hearing and issued a decision dated May 20,
1999, denying Mrs. Cronin's application.
The plaintiff timely filed this action for judicial review pursuant to M.G.L.c. 30A, §14 on June 18, 1999.
fi. ISSUES PRESENTED
A. Whether the rehearing decision was based on an error of law that the assets of the Realty Trust are countable for MassHealth eligibility purposes.
B. Whether the Commissioner’s order for a rehearing was valid.
III. BACKGROUND
MassHealth, also known as Medicaid, is a joint federal and state program established in 1965 by Title XIX of the Social Security Act, 42 U.S.C. §§1396 et seq. Although administered by the States, state programs *566 must comply with Federal statutes and regulations in order to receive Federal funding. Harris v. McRae, 448 U.S. 297 (1980). The Health Care Financing Administration (“HCFA”) issues interpretative federal guidelines which appear in the State Medicaid Manual. Massachusetts Hosp. Ass’n v. Department of Pub. Welfare, 419 Mass. 644 (1995).
The Division of Medical Assistance provides coverage for long-term institutional care for the elderly and disabled who meet eligibility requirements found at 130 CMR 520 et seq. Generally, the asset limit for such coverage is $2,000 of “countable assets” for individuals and $83,960 of “countable assets” when there is a spouse residing in the community. Assets held in trusts are “countable” or “available” to the applicant when the trust permits principal to be paid to the applicant or spouse. See 42 U.S.C. 1396p, HCFA Transmittal No. 64 (attached hereto), and 130 CMR 520.021 through 520.024.
IV. DISCUSSION
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Bd. of Appeals of Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989). While the Court may set aside the decision of the agency only as permitted by G.L.c. 30A, §14(7), “to the extent that an agency determination involves a question of law, it is subject to de novo judicial review.” Haverill Municipal Hospital v. Comm’r of the Div. of Medical Assistance, 45 Mass.App.Ct 386, 390 (1998) (emphasis added) quoting Raytheon Co. v. Director of the Div. of Employment Security, 364 Mass. 593, 595 (1974). Further, although an administrative agency is entitled to some deference in interpreting the statute it is charged with enforcing, the Court will reverse an agency decision if the interpretation is unreasonable. See Martinez v. Comm’r of Pub. Welfare, 397 Mass. 386 (1986).
A. Availability of Trust Assets
The DMA’s decision in this case is erroneous as a matter of law. The Rehearing Officer concluded that the Realty Trust is a “countable asset” because circumstances exist under which the trustee could pay trust principal to Mrs. Cronin. The Rehearing Officer based this decision on the ground that “(there are no limitations or restrictions on the amendment power or authority of the trustee” of the Realty Trust, and that “[b]y its very terms, (the trustee) has the ‘unfettered authority to amend the Trust in any manner she desires.’ ” The rehearing officer’s decision, however, offers no Realty Trust citation for this quotation. The quotation is nowhere in the L.E.C. Realty Trust. In contrast, the trust terms state that the trustee has the power to “alter, amend, revoke or terminate the Trust . . . provided however that these powers may only be exercised with the approval of (the beneficiaries).” (Articles IV, paragraph 1.) Accordingly, as is the case with all nominee trusts, the trustee is completely limited in his or her ability to amend or revoke the trust and can only do so at the direction of those listed on the Schedule of Beneficiaries.[1]
Further, the rehearing officer misstated that “[b]y the very terms of the L.E.C. Realty Trust, there are circumstances where any portion of the principal or income from the principal could be paid to or for the benefit of the appellant.”[2] This reading is exactly the opposite of the terms of the trust which, as all nominee trusts, limit the trustee to pay the principal only to the beneficiaries, and when exercised, only in the percentages of their beneficial interest. The trust states that the trustee is only authorized to pay the income or principal “among the beneficiaries in proportion to their respective interests.” (Article IV, paragraph 13.) The appellant, however, is not a beneficiary of the Realty Trust. The closest nexus the appellant has to being a beneficiary of the Realty Trust is that the Irrevocable Trust is a 40 percent beneficiary of the Really Trust. The appellant is one of several beneficiaries of the Irrevocable Trust and has an income-only interest. Accordingly, the trustee is never authorized, under any circumstance, to distribute principal to the appellant.
B. Rehearing Order
Orders for rehearings of MassHealth appeals may only be ordered where there is “good cause shown” to the Commissioner. M.G.L.c. 118E, §47, 130 CMR 610.091 (A). The Commissioner ordered a rehearing for Mrs. Cronin, however, not because the hearing contained some procedural defect which would cause the decision to be unreliable, but rather because he disagreed with the result of the hearing.
Although there is no Massachusetts case specifically on point which defines “good cause” for this context, cases from other jurisdictions in various regulatory contexts have, without exception, defined “good cause” for a rehearing as meaning a procedural defect in the original hearing, not a different opinion on the merits. See Kay Construction Co. v. County Council for Montgomery County, 227 Md. 479 (1962), and cases cited, Merritt-Chapman & Scott Corp. v. Industrial Accident Commission, 6 Cal.2d 314 (1936), Hines v. Royal Indemnity Corsage., 253 F.2d 111 (6th Cir., 1958). Svoboda v. Svoboda, 245 Iowa 111(1953), Greely & Loveland Irr. Co. v. Handy Ditch Corsage., 77 Colo. 487 (1925): See also State v. Estencion, 63 Hawaii Reports 264 (1981) (“good cause” ground is provided to take care of unanticipated circumstances). The Court in Kay reasoned that it should be self-evident that if “good cause” is to mean anything, it cannot mean a mere different opinion on the correctness of the hearing decision. Kay at 487.
Related Massachusetts case law confirms this interpretation. Massachusetts cases have made clear that where the regulations do not clearly specify the authority of an agency to reopen adjudications, the agency may have the authority to do so, but the choice *567 to do so must be made sparingly, and when chosen, may only be on account of procedural defect such as fraud, misrepresentation, misconduct, or additional evidence. See Aronson v. Brookline Rent Control Board. 19 Mass.App.Ct. 700 (1985), Covell v. Department of Social Services, 42 Mass.App.Ct. 427 (1997). The Appeals Court has proposed an analogy to Rule 60(b) of the Rules of Civil Procedure for such situations. Aron-son at 43. Rule 60(b) only offers relief from a judgment where there was some procedural defect in the original adjudication such as newly discovered.
The Division has argued that the Commissioner should retain this ability to order a rehearing if he or she disagrees with the decision because the DMA may not seek judicial review of the decision under G.L.c. 30A, §14. Under G.L.c. 118E, §47, however, the decision of the hearing officer is the decision of the DMA. The Commissioner is authorized by statute to either conduct a hearing on a MassHealth appeal himself or herself or delegate it to the Board of Hearings. When the Commissioner delegates a hearing to a referee, however, he or she cannot later usurp the hearing decision from that referee because he or she disagrees. Where the hearing is conducted by the Board of Hearings, “such appeals, hearings, and decisions shall be subject to the provisions of Section 48. M.G.L.c. 118E, §47. Section 48 states that ”neither the director nor any other employee of the division shall review, interfere with, change or attempt to influence any hearing decision by a referee. M.G.L.c. 118E, §48. Thus, the statute indicates that where the Commissioner delegates a hearing to a referee, the Commissioner does exactly that, he or she delegates the decision of the merits of the appeal to that referee.
Notably, the statute does not contain any language which would support the DMA’s argument that the Commissioner may second-guess a hearing officer’s decision if he or she disagrees with the result. Section 48 does not state that the Commissioner may review the referee decision. Section 48 does not state that the Commissioner may choose whether to adopt the referee’s decision as the decision of the division. Section 48 states exactly the opposite, that where the Commissioner delegates a hearing to the Board of Hearings, the Hearing Officer makes the decision, and that decision is the decision of the division. The Commissioner may not put an applicant through a farcical hearing and wait for the hearing result before deciding whether to decide the merits of the appeal. If “good cause” means “disagrees with the result,” the language of Sections 47 and 48 is rendered meaningless.
IV. ORDER
Accordingly, it is ORDERED, that the decision of the Division of Medical Assistance denying Mrs. Cronin’s application for Medical Assistance benefits be reversed and it is further ORDERED, that the Division of Medical Assistance declare Mrs. Cronin eligible for Medical Assistance benefits effective September 1, 1998.

The DMA’s reliance on the fact that the Realty Trust can be revoked or amended is misplaced. The revocability or amendability does not cause a trust to be available to a MassHealth applicant where such a revocation or amendment would constitute a breach of fiduciary duty to the beneficiaries. If Mrs. Waterhouse revoked or amended the Realty Tmst in order to provide assets to Mrs. Cronin, she would violate her fiduciary duty to the beneficiaries of the Irrevocable Trust.

The assets of a trust sire only considered available to the applicant where the trustee has discretion by the terms of the trust to pay the trust principal to the applicant. See 42 U.S.C. 1396p, HCFA Transmittal No. 64, 130 CMR 521 through 524.