LAHEY CLINIC FOUNDATION, INC. & another vs. HEALTH
FACILITIES APPEALS BOARD & others.

Suffolk. May 3, 1978 — September 18, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Administrative Matter. Jurisdiction, Civil, Administrative matter. Administrative Law, Exhaustion of remedies. Quasi Judicial Tribunal. Health Facilities Appeals Board. Hospital.*

Where a party appealing a decision of the Department of Public Health to the Health Facilities Appeals Board under the provisions of G. L. c. 111, § 25E, withdrew its appeal, and the board ruled that any of the automatic parties under board rule § 3.03 (a) could continue to prosecute the appeal despite the original appellant's withdrawal, the board's decision denying the appellee's motion to dismiss the appeal was not final, and a Superior Court judge acted prematurely in ruling that the appeal to the board had been withdrawn and that no appeal was pending, and he erred in dismissing the proceedings before the board. [368–370]

A counterclaim by a ten taxpayers' group, pursuant to G. L. c. 111, § 25G, seeking enforcement of the determination of need statute, c. 111, §§ 25B-25G, against an applicant for a license to establish a hospital-clinic complex, should have been dismissed so far as it sought direct review of decisions of the Department of Public Health for which the group never sought departmental review as provided under § 98 of the department's regulations and so far as it sought review of issues that had never been presented to the department for decision [370–371]; however, even though it would have been preferable to defer judicial decision of an issue raised by the counterclaim as to whether a departmental grant of an "extension" to the applicant amounted in substance to a grant of a new determination of need until the Health Facilities Appeals Board had disposed of the issue, it was appropriate to grant declaratory relief where the issue had been fully tried in a proceeding to which the board had been a party and where retrial of the issue before the board would be of doubtful utility, wasteful, and further delay an already lengthy proceeding [371–372]. QUIRICO, J., dissenting.

In reviewing action by the Department of Public Health, the Health Facilities Appeals Board is restricted by G. L. c. 111, § 25E, "to consideration of whether the determination appealed from was an abuse of discretion, without observance of procedure required by law or in violation of applicable provisions of law," and the restriction is applicable to the question whether the department has properly classified its action. [372]

There was no error in a 1976 decision by the Public Health Council of the Department of Public Health to issue an "extension of determination of need" to an applicant for a license to establish a hospital-clinic complex which was originally granted a determination of need under the provisions of G. L. c. 111, §§ 25B-25G, in 1972; the fact that the extension permitted an increase in cost, an increase in gross square footage, and changes in planned services did not render the project different from the one originally approved nor necessitate a new determination of need. [372–375]

The role of the Health Facilities Appeals Board in reviewing action by the Department of Public Health under G. L. c. 111, §§ 25B-25H, is limited to initial approval for construction of a health facility and does not extend to review of changes in the project. [376]

CIVIL ACTION commenced in the Superior Court on March 23, 1977.

The case was heard by *Bonin,* C.J.

The Supreme Judicial Court granted a request for direct appellate review.

*Lawrence S. Fordham (Loyd M. Starrett & Arthur G. Telegen* with him) for the Concerned Committee for Hospital Cost Control.

*Donald K. Stern,* Assistant Attorney General (*S. Stephen Rosenfeld,* Assistant Attorney General, with him) for Health Facilities Appeals Board.

*David Berman,* Town Counsel, for the town of Burlington.

*George T. Finnegan (Ronald B. Schram & Wayne H. Scott* with him) for Lahey Clinic Foundation, Inc.

*Carl Cyr, Joan Ghio & George L. Judge,* for Consumers for a Health Care Choice, amicus curiae, submitted a brief.

*John T. Hasenjaeger,* amicus curiae, submitted a brief.

*Wayne A. Budd*, for the North Shore Health Planning Council, Inc., amicus curiae, submitted a brief.

*Henry Wheeler, Howard Whitehead & Regina S. Rockefeller*, for the Middlesex North Medical Society & others, amici curiae, submitted a brief.

BRAUCHER, J. In 1972 the Department of Public Health (department) granted a "determination of need" (DoN) to the Lahey Clinic Foundation, Inc. (Lahey), for a 200 bed hospital-clinic complex in Burlington. In December, 1976, the department issued an "extension of determination of need," approving increases in gross square feet and in cost. A ten taxpayer group called the Concerned Committee for Hospital Cost Control (Concerned Committee) and the Health Facilities Appeals Board (board) contend that the "extension" was in substance a grant of a new DoN, subject to review by the board. A judge of the Superior Court, after seventeen days of trial, ruled against that contention. The Concerned Committee and the board appealed, and we granted the application of all parties for direct appellate review. We hold that the issue should have been determined by the board. In view of the circumstances, however, particularly the public interest in a speedy resolution of the controversy, we review the merits of the dispute, conclude that the "extension" was not in substance a grant of a new DoN, and order the entry of a judgment declaring the rights of the parties.

1. *The action.* The Public Health Council (Council) of the department voted the "extension" on December 14, 1976, and issued it December 28, 1976. An appeal to the board was taken on January 11, 1977, pursuant to G. L. c. 111, § 25E, and § 3.01(b) of the board's regulations. Lahey and the department moved to dismiss the appeal, and on March 14, 1977, the board denied those motions, ruling that the "extension" was a DoN "for the purposes of our appellate jurisdiction."

On March 23, 1977, Lahey sued the board in the Superior Court for declaratory and injunctive relief. The judge issued a temporary restraining order against the board,

allowed a motion of the Concerned Committee to intervene, and held three days of evidentiary hearings. On April 1, 1977, the judge announced his decision orally. In a written decision dated April 20, 1977, he ruled that there was a reasonable likelihood that Lahey would prevail on its contention that the board lacked subject matter jurisdiction; he also ruled that no appeal was pending before the board after the original appellant withdrew its appeal on March 7, 1977; he ordered that the proceedings before the board be dismissed. Judgment was entered on May 13, 1977, dismissing those proceedings.

Meanwhile, the Concerned Committee had filed a counterclaim against Lahey under G. L. c. 111, § 25G, to enforce the provisions of the DoN statute, §§ 25C-25G, seeking declaratory and injunctive relief. The board was permitted to intervene as a plaintiff in counterclaim, and the town of Burlington to intervene in opposition to the counterclaim. Extensive hearings were held in May and June, 1977. On his own motion the judge notified the department to appear and show cause why it should not be joined as a defendant in counterclaim; after hearing, the proposed joinder was denied. On September 16, 1977, the judge filed a memorandum of decision of ninety-four pages, and pursuant to that memorandum judgment was entered on October 11, 1977, dismissing the counterclaim and denying all relief sought by the plaintiffs in counterclaim. The Concerned Committee and the board appealed from both the decision on the action brought by Lahey and the decision on the counterclaim.

2. *The history.* a. *The 1972 DoN.* Before November, 1971, there was no DoN statute like the present G. L. c. 111, §§ 25B-25G, but G. L. c. 111, § 51, as appearing in St. 1967, c. 891, § 1, provided, as it does today, that an original license to establish or maintain a hospital or clinic should not be issued "unless there is determination by the department that there is need for such a facility at the designated location." In November, 1970, the department approved "in principle" Lahey's plan to con-

struct a medical facility in Burlington. The town of Burlington approved necessary zoning changes and issued a special permit; Lahey purchased the site and began planning. On October 22, 1971, Lahey submitted a letter of intent (LoI) to the department projecting a 250-bed hospital, a clinic and a research center, occupying 400,000 gross square feet and costing $43.1 million. It was clear that the size and cost figures were estimates based on rules of thumb rather than on architects' plans.

On November 15, 1971, an emergency DoN statute, St. 1971, c. 1080, was adopted, effective immediately; regulations under that statute were published December 22, 1971. The statute required consideration of "present and projected future needs," but did not mention costs or square footage. The regulations required an "estimated cost" and "simple line drawing plans showing proposed structures," and approximate gross square footage could have been determined from such plans. On December 30, 1971, Lahey filed an application for a DoN, incorporating the LoI and requesting a waiver of the "simple line drawing plans." On May 9, 1972, the Council granted a DoN to Lahey for a 200-bed hospital rather than the proposed 250-bed hospital, but at the same "estimated cost" of $43.1 million. No square footage was stated. There was no appeal.

b. *The 1972 DoN statute.* The 1971 emergency DoN statute expired on May 31, 1972. On July 18, 1972, G. L. c. 111, §§ 25B-25G, was inserted by St. 1972, c. 776, § 3, retroactive to June 1, 1972. § 6. Under § 25C no one may make "substantial capital expenditures" for construction of a health care facility or "substantially change the services" of such a facility without a DoN. For the first time, § 25C directed the department to consider costs. "Substantial capital expenditure" meant an expenditure in excess of $100,000 until St. 1977, c. 945, § 2, amended § 25B by raising the amount to $150,000. Lahey's DoN was covered by St. 1972, c. 776, § 4: "All determinations of need granted and actions taken by said department

under the provisions of said chapter one thousand and eighty shall remain in full force and effect and be deemed to be granted or taken under the provisions of said sections twenty-five B to twenty-five G, inclusive." The 1971 DoN regulations, except in so far as they were in conflict with the 1972 statute, were continued in effect until new DoN regulations were issued, effective September 1, 1973. On January 23, 1975, the department passed a resolution on cost overruns; 1975 DoN regulations became effective May 1, 1975; and 1976 DoN regulations became effective November 26, 1976. The effect of these regulations will be discussed hereafter.

c. *Progress 1972-1976.* After Lahey obtained its DoN in May, 1972, it went forward with planning and architectural work, consulting frequently with the department's Bureau of Planning and Construction, later renamed the Bureau of Engineering and Construction (Bureau). Pursuant to an extension of time, Lahey submitted preliminary plans on March 1, 1973, and revised preliminary plans on December 7, 1973; in each case the Bureau wrote that the plans were "approvable." In January, 1974, Lahey began preliminary site work; site excavation work was done between August, 1974, and April, 1975.

As the plans developed, the estimated cost and gross square footage increased. After a general review of cost overruns, to be discussed hereafter, the Council approved Lahey's cost overruns and on March 4, 1975, Lahey was notified that $67,208,000 was "the upper ceiling approved" by the department for DoN purposes. On March 31, 1975, the Bureau approved Lahey's revised preliminary plans showing 674,000 gross square feet and cost of $67,273,000. The approval was "based on, and limited to, that scope of work as set forth under the Determination of Need approval."

After consultation with and approval by the department, Lahey began construction of a physicians' office building on the site early in 1976 and it was completed in September, 1976. The building occupies 20,244 gross

square feet. It has been licensed by the department, and a clinic is being operated there.

d. *The 1976 "extension."* On August 31, 1976, Lahey asked the department to approve cost overruns which brought planned total costs to $81,066,352. Some $10.5 million of the increase was in financing costs, and was related to a shift from tax exempt bonds to a Federal Housing Authority loan after a fiscal crisis in New York. The Council deducted certain noncapital costs, reducing the total to $79,666,352. After several consultations between Lahey and the department and an inquiry into gross square footage by the department's DoN program director, the Council voted, on December 14, 1976, to accept a staff recommendation that Lahey be allowed "to complete the project as presently designed." There was no compliance with the procedures required for a DoN.

On December 28, 1976, the department sent Lahey a "Notice of Extension of Determination of Need." The notice stated that the present project was "different" from the one approved on May 9, 1972, because of the increase from 400,000 to 674,000 gross square footage; it extended the original DoN to allow 674,000 gross square feet at a cost of $67,208,000; it gave reasons; and it stated, "Any party wishing to appeal the Department's action stated above may do so in accordance with Section 98 of the Regulations which allows for a Departmental Review in cases involving extension and/or revocation of a Determination of Need." On January 5, 1977, the department notified Lahey that cost overruns up to $80,204,125 would be approved once final architectural plans were submitted.

3. *Exhaustion of administrative remedies.* In denying the board's motion to dismiss the action brought by Lahey, the judge took note of the "requirement that parties exhaust their administrative remedies before seeking" judicial review. *Assuncao's Case,* 372 Mass. 6, 8 (1977). *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444, 448-453 (1973).

He ruled, however, that there was an exception to the exhaustion doctrine for "cases where an administrative board is dealing with a matter that is clearly beyond the scope of its authority." *St. Luke's Hosp.* v. *Labor Relations Comm'n,* 320 Mass. 467, 470 (1946). *Ciszewski* v. *Industrial Accident Bd.,* 367 Mass. 135, 140-143 (1975). The board had "clearly determined that it had subject matter jurisdiction," he said, and the exception applied. He determined that there was "a reasonable likelihood" that Lahey would prevail on this issue, and therefore denied the board's motion to dismiss.

a. *The authority of the board.* The board was established by the 1972 DoN statute. Under G. L. c. 111, § 25C, a public hearing before the department on an application for a DoN may be requested "by the applicant, the state or appropriate regional comprehensive health planning agency, or any ten taxpayers of the commonwealth." Section 25E provides in part: "Any person or agency filing an application for determination of need or empowered to request a public hearing under the provisions of section twenty-five C, and aggrieved by the determination thereof may, within fourteen days after such determination, file an appeal to the health facilities appeals board established by section one hundred and sixty-six of chapter six." The board is to restrict itself "to consideration of whether the determination appealed from was an abuse of discretion, without observance of procedure required by law or in violation of applicable provisions of law." Within sixty days after filing of the appeal, the board is to issue "a final decision, either denying the appeal, . . . or order the matter remanded to the department for action consistent with the opinion of the board."

Under § 25F both the department and the board are to promulgate rules and regulations to implement §§ 25C through 25G. Under the rules of procedure of the board, " 'Determination of Need' means the issuance of: (a) a Certification of Need constituting official written notification of the Deparment of a determination that need

exists for a project, in whole or in part, and containing the conditions incident to such determination; or (b) an official notification that no need for a project has been found by the Department." § 2.04. An appeal to the board may be taken only from a DoN made by the department pursuant to G. L. c. 111, § 25C. § 3.01 (d). An applicant, a "comparable applicant," the State comprehensive health planning agency, the regional comprehensive health planning agency, or agencies with geographical jurisdiction of the area to be served by the health care facility, or any ten taxpayers of the Commonwealth may be appellants; the fourteen days for appeal "is computed from the date of receipt of the determination of need by the appellant." § 3.01(a), (b).

On January 11, 1977, a ten taxpayer group known as Suburban Communities (Suburban) filed an appeal to the board from the department's "extension" action of December 28, 1976. Suburban was a proper appellant, and the appeal was timely. Although the action did not purport to be a DoN under § 25C, the board ruled on March 14, 1977, "the Department's approval in substance constituted a new determination of need," and "must be seen as a determination of need for the purposes of our appellate jurisdiction." "The Department's failure to characterize correctly its action would seem an insufficient reason for denying our jurisdiction," the board said. The motions to dismiss filed by the department and Lahey were denied.

The board's decision can be read either as a final decision on the issue whether the department's action was in substance a DoN, or as a preliminary decision "for the purposes of" the board's "appellate jurisdiction," leaving the issue still to be determined on the merits. As a preliminary decision, we think the board's decision was correct; the characterization by the department of its action as a matter of "extension and/or revocation" rather than as a DoN was not conclusive as to the board's jurisdiction. As a final decision, however, the board's decision was inadequate.

b. *Withdrawal of the appeal to the board.* In dismissing the proceedings before the board, the judge did not reach the issue whether the department's action was in substance a DoN. Instead he ruled that the appeal to the board had been withdrawn. Suburban, the original appellant, withdrew its appeal on March 7, 1977. Board rule § 3.03 (a) provides that certain parties become automatic parties to an appeal, and that additional ten taxpayer groups may petition to intervene within fourteen days of the board's receipt of a claim of appeal. In its decision of March 14, 1977, the board ruled that any of the automatic parties could continue to prosecute the appeal despite Suburban's withdrawal, and that "perhaps" other ten taxpayer groups could intervene "under the unique circumstances of this case." The board ordered the appeal dismissed unless within fourteen days at least one of the necessary parties entered a statement of intention to prosecute the appeal. Within the fourteen days allowed by the board, North Shore Health Planning Council, Inc. (North Shore), one of the automatic parties, filed a claim of appeal, and the Concerned Committee filed a petition to intervene.

After Lahey's complaint was filed on March 23, 1977, the judge issued a temporary restraining order restraining the board from granting such petitions to intervene or claims of appeal, and he later ordered the board to deny the petition of the Concerned Committee and to exclude North Shore as a party. He ruled that there was no appeal pending after Suburban's withdrawal, that North Shore was not an appropriate party in any event, and that the Concerned Committee had "no independent statutory standing to appeal."

c. *Judicial review of decisions of the board.* Explicit provision for judicial review of board decisions is made by G. L. c. 111, § 25E,[1] only in cases of "a final decision, . . .

_____

[1] "The board shall, within sixty days after filing of the appeal, issue a final decision, either denying the appeal, in which case said decision

denying the appeal." A decision denying a motion to dismiss the appeal is in no sense "final," nor is it a decision "denying the appeal." It follows that authority for review of the board's decision as to its own jurisdiction must be found, if at all, outside the statute.

In a number of cases we have held that a writ of prohibition was an appropriate method of preventing a quasi judicial body from exercising a jurisdiction which it did not possess and of determining whether jurisdiction existed. *Masachusetts Bay Transp. Auth.* v. *Labor Relations Comm'n,* 356 Mass. 563, 564 (1970), and cases cited. In those cases, however, the lack of jurisdiction appeared to be clear from agreed facts. See *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444, 451 (1973). In the present case, although the subsidiary facts were largely undisputed, there was no agreement on factual conclusions. Cf. *id.* at 452. Moreover, nothing in the writ of prohibition cases suggests that a court should intervene with respect to such interlocutory procedural questions as who is a party to an administrative appeal, when the withdrawal of such an appeal takes effect, or whether a late petition to intervene should be entertained by the board. In *Assessors of Boston* v. *Suffolk Law School,* 295 Mass. 489, 492 (1936), cited by Lahey to support the judge's ruling, the question was decided by this court on review of a final decision of the agency.

Hence, we conclude, the judge acted prematurely in ruling that the appeal to the board had been withdrawn and that no appeal was pending, and he erred in dismissing the proceedings before the board. The judgment in the action brought by Lahey must be reversed.

---

shall be subject to judicial review under the provisions of section fourteen of chapter thirty A to the extent they are not inconsistent with the provisions of this section, or order the matter remanded to the department for action consistent with the opinion of the board."

To avoid misunderstanding, we add that we are not holding that the Superior Court was without jurisdiction in the premises. The DoN statute, § 25E, requires the board to issue a final decision within sixty days after filing of the appeal, and the judge acted after the period had expired. If an administrative agency is acting in violation of law, and irreparable injury is threatened, equitable relief may well be available. Cf. *Black* v. *School Comm. of Malden*, 365 Mass. 197, 202-203 (1974). But the court should not exercise its jurisdiction so as to usurp the powers of the board.

For example, § 3.09 of the board's rules provides, "The filing of a claim of appeal shall operate as a stay of the determination of need appealed from ... unless, upon request by a party, the Board is satisfied that a stay is not necessary to preserve the substantial interest of any party pending a final decision by the Board." In some circumstances such a stay might threaten the applicant with irreparable injury without serving any substantial interest of objecting parties, particularly if there were excessive delay by the board. If the board were to deny relief from the automatic stay in such a case, interlocutory relief in the Superior Court Department might be appropriate. But ordinarily any final judicial determination should be withheld until there has been a fair opportunity for administrative decision. Cf. *Warner Cable of Mass. Inc.* v. *Community Antenna Television Comm'n*, 372 Mass. 495, 500-501 (1977); *J. & J. Enterprises, Inc.* v. *Martignetti*, 369 Mass. 535, 540-541 (1976).

In the present case it is not shown that there was an application to the board for relief from the automatic stay provided by § 3.09, and no issue is made of the board's failure to issue a final decision within the sixty-day period. So far as the record before us discloses, Lahey may have contributed or agreed to the delay.

d. *The counterclaim.* The counterclaim of the Concerned Committee, pursuant to G. L. c. 111, § 25G, sought enforcement of the DoN statute against Lahey. So far as

it sought direct review of the department's decisions with respect to Lahey subsequent to the 1972 DoN, the counterclaim should have been dismissed. As the department stated in its notice of the 1976 "extension," "in cases involving extension and/or revocation" of a DoN, departmental review was available under § 98 of the DoN regulations. Final departmental decisions are subject to judicial review. The Concerned Committee never sought departmental review, and thus had failed to exhaust its administrative remedies. Similar considerations should have prevented review of issues that had never been presented to the department for decision.

The counterclaim also sought to resolve the issue whether the 1976 "extension" amounted in substance to a grant of a new DoN. We think it would have been better practice to defer judicial decision of that issue until the board had had a further opportunity to make it clear that it had made a final decision of that issue, and indeed until the board had finally disposed of the appeal. Perhaps because the judge had already made a contrary ruling with respect to Lahey's action, no party made a motion for the appropriate disposition of the counterclaim in this aspect.

The result is that the issue has been fully tried in a proceeding to which the board was a party. The department had an opportunity to join and did not. Retrial of the issue before the board would be of doubtful utility now that it has participated as an adversary party. Retrial would also be wasteful and would cause still further delay in a proceeding that has already taken more than enough time. If the project were not abandoned, the result would inevitably be to increase its cost still further, contrary to an important objective of the governing statute.

In these circumstances, since we think the board's lack of jurisdiction is clear from facts which are not substantially in dispute, we think it appropriate to grant declaratory relief notwithstanding the failure of the parties to

exhaust administrative remedies. See *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444, 451 (1973). The scope of the board's power to review changes in a project after a DoN has been issued is an important public question whose resolution will affect more persons than the parties to the case. See *id.* at 450. It is primarily a matter of statutory interpretation, not dependent on the facts of the particular case. We therefore proceed to review the issue whether the 1976 "extension" was in substance a new DoN. We do not review any matter not included in the "extension," and particularly do not consider any issues that may have arisen thereafter, although some such issues were considered by the judge.

4. *The 1976 "extension" as a new DoN.* The board made at least a preliminary ruling that the 1976 "extension" was in substance a new DoN, and indicated that the result might be that it was invalid by reason of failure to follow required procedures. The department, of course, had made a contrary decision. The board's review was restricted "to consideration of whether the determination appealed from was an abuse of discretion, without observance of procedure required by law or in violation of applicable provisions of law." G. L. c. 111, § 25E. We think that restriction was applicable to the question whether the department had properly classified its action as well as to other aspects of its decision, and it is equally applicable to consideration of the issue in the Superior Court and in this court.

The decision of the Superior Court, like that of the department, took the form of a conclusion that the present project, though "different" from the one approved in 1972, was authorized by the 1972 DoN. That conclusion is contested by reason of (a) the increase in cost, (b) the increase in gross square footage, and (c) changes in planned services. We consider the three elements separately.

a. *Cost.* Lahey's 1971 LoI, submitted before the 1971 emergency DoN statute was adopted, projected a cost of $43.1 million, based on rules of thumb. The 1972 DoN, issued under the 1971 statute, referred to an "estimated cost" of $43.1 million. The 1971 statute did not mention costs; consideration of costs was required for the first time in the 1972 DoN statute, enacted and effective after the 1972 DoN was granted.

Under the 1973 DoN regulations, a DoN was limited to "the capital expenditure approved," with an upward tolerance of ten per cent, plus, "for good cause shown," a further increase up to fifteen per cent. § 55.3(2). In November, 1974, the department requested information as to cost overruns from each of the 410 projects approved since November, 1971. Analysis of the response resulted in the adoption by the Council on January 23, 1975, of a policy on cost overruns, setting percentage ceilings based on the mean of percentages for all projects. On March 4, 1975, pursuant to that policy, the department notified Lahey that its estimated project costs of $67,208,000 had been approved as within established tolerances, although they exceeded the tolerances provided in the 1973 DoN regulations. A revised figure of $67,273,000, approved March 31, 1975, was also within the tolerances established by the 1975 policy.

The 1975 and 1976 DoN regulations included new provisions on cost overruns. The judge ruled that the department's 1975 policy was a proper response by the department to the situation created by its failure to provide for cost overruns in its 1971 DoN regulations, and by the unfairness of retroactively applying the 1973 DoN regulations to projects approved before the 1973 regulations were adopted. He further ruled that the Lahey overrun approved in 1975 became the "approved project cost" under the 1976 DoN regulations. We uphold those rulings. The result is that the 1976 "extension" was within the tolerances established by the 1976 DoN regulations. It is now far too late to seek either board review or judi-

cial review of the 1975 decision of the department approving the Lahey overrun.

We reject the contention that any change of more than $100,000 in estimated cost required a new DoN. The DoN statute, in § 25B, defined "substantial capital expenditure" in terms of an expenditure for construction exceeding $100,000 (now $150,000), and § 25C requires a DoN for "substantial capital expenditures." But nothing in the statute applied that figure to a change in an approved project. Where, as here, the increased cost of a multimillion dollar project results mainly from inflation, refinement of estimates, and financing costs, such application would be entirely inappropriate.

b. *Gross square footage.* Lahey's 1971 LoI, submitted before the 1971 emergency DoN statute was adopted, projected 400,000 gross square feet, based on rules of thumb. The 1972 DoN did not refer to square footage. Throughout the 1972-1976 period, Lahey submitted refined estimates showing increases in gross square feet to the department, but the Council did not review the increase until 1976.

In the 1976 "extension" the department stated that the project was "different" from the project approved by the 1972 DoN by reason of the increase from 400,000 to 674,-000 gross square feet. But the 1976 DoN regulations provide that, in a case of failure to comply with all the terms and conditions of a DoN, "The Department shall be authorized to take such action as it deems fair and appropriate in the situation." § 90(4). The Council deemed its "extension" decision fair and appropriate. The reasons given were that Lahey had kept the Bureau fully informed and had not received any indication that it might not be in compliance, that revocation would increase costs, that revocation for a violation three and one-half years earlier would be unfair, and that there was no evidence to indicate wilful or malicious intent.

We summarize the judge's findings with respect to square footage. Hospital space planners work in terms of

"net square footage" only, determining the usable area required to fulfil functional requirements. Architects then translate that area into gross square footage, allowing for stairways, corridors and the like. The projection of 400,-000 square feet was based on some 300,000 square feet for hospital and ambulatory care, plus about 100,000 for shared facilities. Later estimates, based on a rule of thumb of 1.7 gross square feet for each net square foot, projected some 300,000 net square feet and 517,000 gross square feet. Lahey's facility is unique in its combination of a large clinic and a small hospital with shared support facilities, and such rules of thumb are not reliable as applied to such a facility. Lahey's later plans called for virtually the identical net square footage originally projected and approved, although miscellaneous changes were made during the evolutionary planning process. Increases in gross square footage as the design developed were approved by the Bureau.

In these circumstances, we uphold the department's decision not to revoke the 1972 DoN by reason of the increase in gross square footage.

c. *Planned services.* The 1972 DoN approved a 200 bed hospital, an ambulatory facility, and "the educational, research, and supporting services which are a normal part of such a facility." The final plans included a 200 bed hospital, an ambulatory facility, and other services. But various items, such as the research department, were eliminated in the evolutionary planning process; others were added, including an ambulatory surgery department, a peripheral vascular laboratory, and an endocrinology department. Ambulatory surgery was an appropriate part of an ambulatory facility, and the latter two items were trifling in relation to the entire project.

d. *Conclusion.* Thus we conclude that the department properly decided that the 1976 "extension" was not in substance a new DoN. That decision was not an abuse of discretion, was not made without observance of procedure required by law, and was not in violation of applic-

able provisions of law. A contrary decision by the board would therefore have been erroneous; if the appeal to the board had not been frustrated by injunction, it should have been denied on the ground that there was no new DoN. In the peculiar circumstances of this case, we order a judgment so declaring.

What we said in *Commissioner of the Dep't of Community Affairs* v. *Boston Redevelopment Auth.*, 362 Mass. 602, 615 (1972), may appropriately be paraphrased to fit the present case. The failure of the statute to provide for board review of all changes, or even of substantial changes, can be construed as deliberate. In view of the nature of planning for such projects and the over-all statutory structure, it is entirely reasonable that the board's role should be limited to review of initial approval. This does not run contrary to the public interest. Eight years of experience have served amply to demonstrate that the Lahey project is not only substantial but highly complex. Through such a period, change in the economy, change in construction costs, and change in what might constitute the best use of the planned space demanded constant flexibility in settling on plan designs. Were each plan revision to be subject to board review, a hopeless administrative morass could develop and thwart the main objective. This could not be deemed a legislative aim nor would it satisfy the requirements of common sense. The result of our decision does not mean that the initial approval is a blank check, but only that, as a matter of legislative judgment, the department, rather than the board, has been granted the basic responsibility for the execution of the plan. Cf. *Boston Edison Co.* v. *Boston Redevelopment Auth.*, *ante* 151, 153-154 (1978) (judicial review whether change is fundamental).

5. *Disposition.* The judgments entered in the Superior Court are reversed and the case is remanded to that court. A new judgment is to be entered (1) dismissing the action brought by Lahey, and (2) declaring that the department's "extension of determination of need" dated

December 28, 1976, was not in substance a new determination of need, and was not subject to appeal to the board under G. L. c. 111, § 25E.

*So ordered.*

QUIRICO, J. (concurring in part and dissenting in part). I concur with the court's conclusions in part 3c of its opinion that the trial judge "acted prematurely in ruling that the appeal to the [Health Facilities Appeals] board had been withdrawn and that no appeal was pending, and he erred in dismissing the proceedings before the board," and that therefore the "judgment in the action brought by Lahey must be reversed."

Having come to that conclusion, I would remand the matter to the board for further administrative proceedings in accordance with G. L. c. 111, § 25E, and I would not proceed with the opinion beyond that point. The court, however, did not stop there. Instead, it reviewed the action of the trial judge who had in turn purported by way of declaratory relief to review the administrative proceedings which had been held before the Department of Public Health (department) in relation to Lahey's application for a "determination of need" (DoN). I dissent from that portion of the opinion.

The administrative processing of an application for a DoN is governed by the comprehensive statutory scheme contained in G. L. c. 111, §§ 25B-25H. The application must first be filed with and acted on by the department. G. L. c. 111, § 25C. The applicant or any other person or agency aggrieved by the department's decision on the application may, within fourteen days after such decision, appeal therefrom to the Health Facilities Appeals Board (board). The appellant must include with the appeal "a certificate stating that said appeal is not knowingly interposed for delay." Within sixty days after the filing of the appeal, the board is required to issue a final deci-

sion either denying the appeal or remanding the matter to the department for action consistent with the opinion of the board. Ultimately all proceedings of the board are made subject to judicial review under G. L. c. 30A. G. L. c. 111, § 25E.

It is clear that when Lahey sought a judicial determination from the Superior Court the board had not yet had an opportunity to take final action on the appeal then pending before it and that the statutorily mandated appellate administrative remedies had not been exhausted. It is equally clear that the judge of the Superior Court allowed himself to be placed in the reviewing position which, at that interlocutory stage of the proceedings, rightfully belonged to the board. Instead of allowing the board to hear and decide the administrative appeal and then reviewing the board's administrative action in the manner provided by G. L. c. 111, § 25E, and by G. L. c. 30A, the judge pushed the board aside by issuing the restraining order and ordering the dismissal of the appeal before the board. The judge then further usurped the board's powers when he purported, as a judicial matter, to perform the appellate review that the board by statute has the power and responsibility to make administratively.

We have often emphasized the importance of maintaining the integrity of the administrative process and enforcing the requirement for exhaustion of administrative remedies before seeking judicial relief. "The requirement that parties exhaust their administrative remedies before seeking review in [the] court[s] is not a mere procedural device to trap the unwary litigant; rather, it is a sound principle of law and jurisprudence aimed at preserving the integrity of both the administrative and judicial processes. In the absence of such a requirement a court would be in the position of reviewing administrative proceedings in a piecemeal fashion . . . and thus departing from the usual appellate practice of reviewing only final, and not interlocutory, decrees . . . . More important, how-

ever, allowing the administrative process to run its course before permitting full appellate review gives the administrative agency in question a full and fair opportunity to apply its expertise to the statutory scheme which, by law, it has the primary responsibility of enforcing." *Assuncao's Case,* 372 Mass. 6, 8-9 (1977). Accord, *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444, 448-453 (1973). It is my opinion that the present case falls within the general rule stated above, and not within any of the exceptions thereto. See *Ciszewski* v. *Industrial Accident Bd.,* 367 Mass. 135, 140-142 (1975); *St. Luke's Hosp.* v. *Labor Relations Comm'n,* 320 Mass. 467, 469-471 (1946). I cannot agree with the court that "the board's lack of jurisdiction is clear from facts which are not substantially in dispute," for I believe that jurisdiction might turn on unresolved questions of fact that the board should have been allowed to determine in the first instance. See *St. Luke's Hosp.* v. *Labor Relations Comm'n, supra* at 470.

I recognize that the return of this matter to the board would add to the great delay which has already occurred in bringing these proceedings to a conclusion and would undoubtedly add to the cost of the health care facility that is already under construction. In my opinion, both this delay and excess cost were inherent in the procedure Lahey voluntarily adopted, and neither is a factor in the legal question before us.