**Norman DAWSON, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

**Office of Personnel Management, Intervenor.**

No. 82–2421.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1983.

Decided July 5, 1983.

As Modified July 7, 1983.

Rehearing and Rehearing In Banc Denied Aug. 12, 1983.

---

Eric K. Graf, Boardman, Suhr, Curry & Field, Madison, Wis., for petitioner.

Robert A. Reutershan, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Before PELL, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

This is an appeal from the Merit Systems Protection Board's order denying the petitioner's request for attorney's fees under 5 U.S.C. § 7701(g). The Merit Systems Protection Board found that they had the authority to award attorney's fees to the petitioner under 5 U.S.C. § 7701(g), but that an award of attorney's fees was not warranted in this case. The Office of Personnel Management asserts that the Board did not have the authority to award attorney's fees regardless of the merits of the petitioner's case because an appeal of the Office of Personnel Management's decision relating to retirement benefits (in this case disability benefits) is governed by 5 U.S.C. § 8347(d) and that section fails to contain any language authorizing an award of attorney's fees.

We affirm the Merit Systems Protection Board's denial of attorney's fees. However, we do so by holding that the Merit Systems Protection Board was without authority to award such fees because the Board's jurisdiction to hear Dawson's appeal from the Office of Personnel Management's decision was governed by 5 U.S.C. § 8347(d) which fails to contain any language giving the Board "explicit statutory authority" to award attorney's fees against the Office of Personnel Management.

I.

The petitioner, Norman D. Dawson, was employed by the United States Postal Service as an urban mail carrier in 1955, and some twenty-three years later in 1978, he was transferred and assigned to rural carrier duties. On January 10, 1980, Mr. Dawson applied for early retirement under the disability provisions of the Civil Service Act stating: "work is mentally and physically detrimental to my health—These conditions began in 1978—Mentally upsetting working conditions prevent me from performing my duties." He further supported his application for retirement disability benefits with a statement by a psychiatrist that Dawson was suffering from "depressive neurosis." On March 18, 1980, the Chief of the Retirement Claims Division of the United States Civil Service Commission denied Dawson's application for early retirement on the grounds that "total disability for useful and efficient service in the above position [Rural Letter Carrier] is not shown. . . . Since the retirement law does not authorize benefits based on partial disability, your application cannot be approved at this time." Thereafter, Dawson requested the Office of Personnel Management to reconsider its disallowance of his claim for disability retirement benefits, and the Medical Director of the Office of Personnel Management (OPM) sustained the original decision that Dawson was not entitled to early retirement benefits finding that Dawson was not permanently disabled. After reviewing all of the data the petitioner presented in support of his application for disability benefits, the Medical Director concluded that "there are no clinical findings which [adequately] document a physical impairment incompatible with retention

in your position or performance of your assigned duties."

In August of 1980, Mr. Dawson appealed OPM's decision to the Merit Systems Protection Board, requesting the Board to set aside OPM's disallowance of benefits. After a hearing, an examiner for the Board reversed the Medical Director and the Chief of the Retirement Claims Division and found that the record was sufficient to establish that Dawson was "totally disabled for useful and efficient service in the position of Rural Carrier. Accordingly, I find that OPM's reconsideration decision is not supported by a preponderance of the evidence, and OPM's decision is hereby reversed."

After the Board's decision became final, Dawson filed a motion for attorney's fees pursuant to 5 U.S.C. § 7701(g)(1). In a decision dated October 22, 1981, the presiding official held that OPM's denial of Dawson's disability retirement "was clearly without merit" as "OPM articulated no reason or basis for denying [Dawson's] disability retirement claim .... Furthermore, OPM completely disregarded [Dawson's] subjective complaints as mere annoyances and discomforts." Because "OPM knew or should have known that its reconsideration decision could not possibly be sustained on the established record," the presiding official concluded that "the interest of justice warrants the award of reasonable attorney's fees in this case," and ordered the Office of Personnel Management to remit $2,480.46 to Dawson's attorneys.

The decision awarding Dawson attorney's fees became final on November 26, 1981, and thereafter, on December 15, 1981, the Office of Personnel Management filed a petition for review with the Board asserting that the Board was without statutory authority to award attorney's fees when dealing with an appeal of an OPM disability

retirement decision. The Board dismissed OPM's petition as untimely as it was filed after the Board's decision became final on November 26th.[1] The Board reopened the appeal on its own motion[2] based on 5 C.F.R. § 1201.117,[3] and held that attorney's fees are only available to disability retirement applicants when the Office of Personnel Management initiates the initial proceedings, and since Dawson initiated this disability retirement proceeding, he was not entitled to attorney's fees. Dawson appeals the Board's denial of his attorney's fees.

## II.

The petitioner contends that the Board was without authority to reopen his case and reverse its prior decision, as the case was not reopened until after the Board's October 22nd decision granting attorney's fees became final on November 26th. It is Dawson's position that the Board was without the authority to reopen its October 22nd decision and ultimately deny his request for attorney's fees because OPM failed to file its petition for review nor did the Board reopen his case on its own motion until after the decision became final.

 When the Board reopened Dawson's case on its own motion, the Board complied with the express terms of 5 U.S.C. § 7701(e)(1)(B) which provides that the decision of the Board "shall be final *unless* ... the Board reopens and reconsiders a case on its own motion." The regulations establishing the rules of practice and procedure before the Board provide, *inter alia:*

"The Board may reopen and reconsider a decision of a presiding official on its own motion *at any time,* notwithstanding any other provisions of this part."

5 C.F.R. § 1201.117 (emphasis added). Upon our examination of the enabling statute and the Board's interpretative regula-

---

1. 5 C.F.R. § 1201.113 provides:

 "The initial decision of the presiding official shall become final 35 days after issuance."

2. The record does not disclose the precise date the Board made the decision to reopen and reconsider Dawson's case.

3. 5 C.F.R. § 1201.117 provides:

 "The Board may reopen and reconsider a decision of a presiding official on its own motion at any time, notwithstanding any other provisions of this part."

tion, we are unable to find any language that places a time limit on the Board's authority to reopen a case on its own motion. Under the clear and unambiguous language of 5 C.F.R. § 1201.117, the Board had ample authority to "reopen and reconsider [the] decision of a presiding official on its own motion *at any time*" even though the thirty-five day filing period of 5 C.F.R. § 1201.113 had elapsed. The Board's authority in this respect is in keeping with the general rule that administrative agencies have the power to reconsider decisions on their own initiative "as long as proper notice is given and the right is exercised within a reasonable time period." *Bookman v. United States,* 453 F.2d 1263, 1265 (Ct.Cl. 1972).

■ Dawson contends that even if the Board had the power to reopen the case, the Board had not notified him of its decision to reopen. As such, Dawson asserts that the Board violated its own regulations which require the Board to "inform" the party that the case has been reopened. *See* 5 C.F.R. § 1201.116(a).[4] Dawson's argument ignores the fact that the Board informed him by letter dated January 7, 1982 that it had received a petition for review from the Office of Personnel Management and granted Dawson the opportunity to respond to OPM's petition. Dawson availed himself of the opportunity to respond and in fact filed a response requesting that OPM's petition be dismissed as not having been filed in a timely manner, thus, he cannot now argue that he was not informed that the Board was reconsidering his case.

In contrast to Dawson's position that the Board violated section 1201.116 because Dawson "was unaware that [the case] had been reopened until receipt of the order and opinion," the regulation simply states "the Board shall inform the parties of the reopening" and fails to contain language requiring the Board to notify the parties *before* it decides to reopen. It is obvious that the January 7th letter put Dawson on no-

tice that the Board was in the process of reevaluating his case and afforded him the opportunity to, and in fact he did respond, and thus we hold the notice requirements of 5 C.F.R. § 1201.116 have been satisfied. As we have held that the Board was authorized to reopen the case under 5 U.S.C. § 7701(e)(1)(B) and 5 C.F.R. § 1201.117, and as this decision finds support in *Bookman v. United States,* 453 F.2d 1263 (Ct.Cl.1972), we hold that the Board did not abuse its discretion when it reopened Dawson's case on its own motion and reversed its prior decision granting the request for attorney's fees.

### III.

We next address another aspect of the attorney's fee issue, whether the Board had the statutory authority to award Dawson his attorney's fees in the first instance. The Board argues that it had the authority to award the attorney's fees under 5 U.S.C. § 7701(g), but that Dawson's appeal was not of such a nature to allow it to come within the purview of the "interests of justice" provision of section 7701(g). The Office of Personnel Management, on the other hand, asserts that the Board's jurisdiction to review OPM's decisions on disability retirement matters is governed by 5 U.S.C. § 8347(d) which fails to contain language authorizing the Board to grant attorney's fees. Thus the Board was without the authority to award attorney's fees in the first instance.

■ As a general rule, the United States Government, as "sovereign," is liable to third parties only when the government expressly waives its sovereign immunity. *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). It is well established that before a prevailing party may recover attorney's fees from an agency of the United States Government, that party "must first surmount a formidable barrier, the doctrine of sovereign immunity." *N.A. A.C.P. v. Civiletti,* 609 F.2d 514 (D.C.Cir.

---

**4.** 5 C.F.R. § 1201.116(a) provides, in pertinent part:

"In any case reopened or reviewed, the Board shall inform the parties of the reopening and review . . . ."

1979). *See also Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). An assessment of attorney's fees against a government agency "is not permissible in the absence of *explicit statutory authority* that may serve as a waiver of the Government's traditional immunity." *E.E.O.C. v. Kenosha Unified School District,* 620 F.2d 1220, 1227 (7th Cir.1980) (emphasis added). Therefore, we hold that unless there is explicit statutory language unequivocally waiving the sovereign immunity of the United States with respect to granting attorney's fees to a litigant who is appealing a disability retirement decision of the Office of Personnel Management, the Board is without the authority to award Dawson attorney's fees.

The section upon which the Board and the petitioner rely is contained in subpart F of title 5 of the U.S.Code, entitled *"Labor-Management and Employee Relations"* and provides:

> "[T]he Board, or an administrative law judge or other employee of the Board designated to hear a case, may require payment by the agency involved of reasonable attorney's fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee (as the case may be) determines that payment by the agency is *warranted in the interest of justice,* including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit."

5 U.S.C. § 7701(g)(1) (emphasis added). OPM asserts that the Board's jurisdiction to hear appeals from retirement disability decisions is governed by 5 U.S.C. § 8347, set forth in subchapter III of the Civil Service Retirement Act entitled *"Civil Service Retirement,"* which states:

> "(d)(1) ... an administrative action or order affecting the rights or interests of an individual or of the United States *under this subchapter* may be appealed to

the Merit Systems Protection Board under the procedures prescribed by the Board."

Because the parties disagree as to which of these sections applies to the instant case, we must analyze each of these sections within their statutory context, and look to the intent of Congress to determine which of these two sections gives the Board jurisdiction over Dawson's appeal.

The two statutory sections we are called upon to interpret are both contained in title 5 of the United States Code, entitled "Government Organization and Employees." Subpart F of title 5, which contains 5 U.S.C. § 7701, is entitled "Labor-Management and Employee Relations." Each and every section of subchapter F, including § 7701, relates specifically to the various aspects of labor-management and employee relations, including but not limited to disciplinary actions, safety procedures, the conduct of federal employees, etc. Reading § 7701 within its statutory framework reveals that Congress intended § 7701 to apply only to OPM's decisions on "labor-management and employee relations" matters, as would be the case when an employee appeals from an OPM decision affirming the employee's suspension, removal, or other employment-related disciplinary action taken by his employer, the government.

■ Chapter 83 of title 5 of the United States Code, on the other hand, is entitled "Retirement," and subchapter III deals exclusively with "Civil Service Retirement." Section 8337, contained in subchapter III, sets forth the circumstances under which an individual might qualify for disability retirement benefits. Section 8347 expressly provides that any decision relating to Civil Service Retirement made under subchapter III may be appealed by the litigants to the Merit Systems Protection Board. By including § 8337 and § 8347(d) within the same civil service retirement subchapter of title 5, Congress thus expressly authorized the Board to entertain appeals from OPM's decisions denying applications for retirement disability benefits. Therefore, we are presented with contrasting, not conflicting

statutory sections. 5 U.S.C. § 7701 gives the Board jurisdiction over OPM decisions on "labor-management and employee relations" matters, which is contrasted with the Board's authority to hear appeals from "civil service retirement" decisions under 5 U.S.C. § 8347. Since Dawson's appeal is a "civil service retirement" appeal as it arose out of an OPM decision denying his application for civil service retirement disability benefits, we hold the Board had jurisdiction to hear Dawson's case under the provisions of 5 U.S.C. § 8347(d) dealing with "civil service retirement." 5 U.S.C. § 7701(g) deals with "labor-management and employee relations" and does not apply to any challenge to a civil service disability retirement decision.

The legislative history surrounding the enactment of § 7701 buttresses our decision that § 8347(d) is the section that gives the Board its jurisdiction to hear appeals from OPM's decisions denying applications for disability retirement benefits. In explaining § 7701(g), which gives the Board the authority to award attorney's fees to an employee when the Board determines that it would be in the interest of justice, the Senate Report states that:

> "Payment is only required when it is warranted on the grounds that the agency's action was taken in bad faith. This may occur, for example, when the action brought is wholly unfounded. *Or when there is evidence the agency brought the action to harass the employee or to exert improper pressure on the employee to act in certain ways.*"

S.Rep. No. 95–969, 95th Cong., 2d Sess. at 61, *reprinted in* 1978 U.S.Code Cong. & Ad. News 2723, 2783 (emphasis added). This legislative history indicates that the "underlying purpose" of § 7701(g) was to grant the Board the authority to award attorney's fees in those situations where a government agency initiated an employment related disciplinary action in bad faith, only to exert improper pressure or to harass the employee. This is not the case in the facts before us, as OPM's denial of Dawson's request for early retirement benefits cannot be construed as being made "in bad faith" for the purpose of "exerting improper pressure on the employee to act in certain ways." Rather, the decision to deny Dawson's application for disability retirement benefits was a "neutral" decision, based solely on the OPM's analysis of pertinent medical, psychiatric, social, physical, psychological or other relevant data presented by the applicant along with any contrary evidence submitted by the government. OPM's decision that Dawson was not qualified for retirement disability benefits cannot be construed as "harassing" Dawson and thus it is apparent that Congress did not intend to include Dawson's appeal from OPM's denial of early retirement benefits within the parameters of § 7701(g), which deals with labor-management matters.

From our analysis of the statutory language, the congressional intent and legislative history of § 7701 and § 8347, we hold that 5 U.S.C. § 8347(d) provides the Merit Systems Protection Board with jurisdiction over appeals from OPM decisions relating to civil service retirement (including retirement disability benefits) and therefore the attorney's fees provision of § 7701(g) does not apply to Dawson's case. Since express language is needed to "surmount the formidable barrier" of sovereign immunity and § 8347(d) fails to contain any language giving the Board "explicit statutory authority" to award attorney's fees on an appeal from OPM's decision denying disability retirement benefits, we hold that the Merit Systems Protection Board is without the authority to grant attorney's fees in this case.[5]

Thus, we affirm the Merit Systems Protection Board's denial of attorney's fees, but ground our decision in our finding that it lacked the requisite "explicit statutory authority" under § 8347(d) to award such fees in the present action.

---

**5.** Since we hold that Dawson's appeal to the Board is governed by 5 U.S.C. § 8347 and not 5 U.S.C. § 7701, under the express provisions of 5 U.S.C. § 7703(a)(2), the Board is the proper respondent in this case. Accordingly, OPM's motion to reform the caption and motion for leave to intervene are hereby granted. It should be noted that the granting of these motions has no effect on our resolution of the issues discussed herein.