LEONARD J. ARONSON[1] *vs.* BROOKLINE RENT CONTROL
BOARD.

Norfolk.  January 8, 1985. — April 24, 1985.

Present: GREANEY, C.J., KAPLAN, & WARNER, JJ.

*State Administrative Procedure Act. Administrative Law,* Exhaustion of
remedies, Rehearing. *Jurisdiction,* Administrative matter. *Rent Control.*

A plaintiff who had received a favorable decision from an administrative
    agency following an adjudicatory proceeding was permitted to maintain
    an action in the Superior Court to test the agency's authority to reopen
    its proceedings on its own initiative in order to determine whether the
    decision had been procured by misrepresentation or fraud. [702-703]
A municipal rent control board which, after an adjudicatory proceeding, had
    voted to allow the owner of certain rental housing units to sell the units
    for condominium ownership could properly reopen its proceedings in
    order to determine whether its decision had been procured by misrep-
    resentation or fraud, even though no statute or regulation specifically
    authorized the reopening. [703-708]

CIVIL ACTION commenced in the Superior Court Department
on July 6, 1983.

The case was heard by *B. Joseph Fitzsimmons,* J.

*Anita E. Cohen* (*Leslie H. Rudnick* with her) for the plaintiff.

*Roger R. Lipson* for the defendant.

KAPLAN, J.  We hold, affirming a judgment of the Superior
Court, that the Brookline rent control board (board) may reopen
its adjudicatory proceedings, which had resulted in decisions
permitting the plaintiff Aronson to sell his housing units as
condominiums, in order to determine whether he procured
those decisions by misrepresentation or fraud.

By force of a by-law of the town of Brookline, authorized
by St. 1970, c. 843,[2] the board is empowered to regulate the

───────────────────

[1] Individually and as trustee of National Realty Trust.

[2] Amended in a respect not here relevant by St. 1971, c. 673.

removal of housing units from rental housing use for the pur-
pose of condominium conversion. The effect of the provisions
of town by-law 38 (see §§ 3[h][1] and 9A) and of the board's
regulation 29 was, at the times here relevant, to condition such
removal upon the owner's securing, as applicable, either a
"removal permit" or an "exemption." With enumerated excep-
tions,[3] permits were granted in the exercise of the board's
discretion, of which it is only necessary to say, for the purposes
of the present case, that a preference was allowed (and generally
accorded) to a purchaser who lived in the same building in a
unit other than that which was the subject of the sale.[4] An
exemption was available where the purchaser was an "existing
tenant" (as defined) of the unit to be sold.[5]

At dates between July, 1982, and April, 1983, the board
granted the plaintiff Aronson, as owner, a permit with respect
to one unit at 1080 Beacon Street, and exemptions covering
eleven other units in the same building. It appears that the
board made these decisions entirely, or at least in material part,
on the basis of submissions by the plaintiff consisting of his
testifying on oath and producing purchase and sale agreements.

By May 31, 1983, the board, evidently aided by a staff
investigation, had come to suspect that there might have been
misrepresentation or fraud in the plaintiff's submissions on
which it had acted; and on that date it voted to reopen the
removal hearings on all twelve units "in order to determine,"
as it stated in its notice to the plaintiff and others, "whether
the subject units were, in fact, sold to existing tenants." By a
board subpoena of June 23, 1983, the plaintiff was directed
to appear on June 27 to give evidence on this matter[6] and pro-

---

[3] By-law 38, § 9A(c), (d), (g).

[4] Regulation 29, § 6(f)(1). The preference has since been eliminated.

[5] Prior to February 24, 1983, "existing tenant" was defined as the last
tenant who had lived in the unit for at least one year; after that date, as a
tenant who had lived in the unit for two years or more and had moved into
it without an option or agreement to purchase it or an intention to do so.
By-law 38, § 3(h)(1) & n.8. Regulation 29, § 1(c), (d).

[6] Specifically, "to give evidence of what you know relating to the sales
of [the particular units], and the past and present occupants of said units
and the length of their occupancy."

duce various documents. The hearing was continued at the plaintiff's request to July 11.

On July 6, 1983, the plaintiff commenced the present action seeking, in substance, a declaration and an injunction forbidding the board to reopen its proceedings. After the board filed its answer, the plaintiff moved for summary judgment on the pleadings. The judge denied the motion; and, upon the pleadings with their annexed exhibits, and after "trial" consisting of statements and arguments of counsel which supplied some additional material, the judge made findings, rulings, and an order for judgment. The essential facts, as outlined above, may be drawn from the findings with some references to the record. Judgment entered on January 18, 1984, "grant[ing] authority" to the board (more properly, confirming the board's authority) "to re-open its 'removal hearings' with respect to the housing units . . . for the sole purpose of determining whether or not fraud or misrepresentation was perpetrated upon the board in the granting of removal permits or exemptions . . . ." This judgment is here on review, and, with it, a previous protective order in the action allowing the board's motion to strike the plaintiff's interrogatories.[7]

1. While the plaintiff challenges the "jurisdiction" of the board to reopen its hearings, there is a more immediate question of the authority of the Superior Court to entertain the present action. By St. 1970, c. 843, § 4, the State Administrative Procedure Act, G. L. c. 30A, is made applicable to the board "as if said rent board were an agency of the commonwealth," including expressly "those provisions relating to judicial review of an agency order." By § 14 of c. 30A, inserted by St. 1973, c. 1114, § 3, it is "any person . . . aggrieved by a final decision of any agency in an adjudicatory proceeding" who "shall be entitled to a judicial review thereof." But there has been no final agency decision in these adjudicatory proceedings; it

---

[7] Upon the plaintiff's motion for an injunction pending appeal, the judge entered an order permitting the board to hold the hearings, but forbidding it to take action therein — including releasing any decision — during the pendency of the appeal. (The plaintiff then unsuccessfully petitioned a single justice of this court to stay that order and the underlying judgment.)

is the purpose of the action to interdict such a decision. This would seem to deprive the plaintiff of "standing" to maintain the action or, otherwise stated, to oust the Superior Court. See *Duato* v. *Commissioner of Pub. Welfare,* 359 Mass. 635, 637-638 (1971); *Group Ins. Commn.* v. *Labor Relations Commn.,* 381 Mass. 199, 202 & n.3 (1980); *Boston Edison Co.* v. *Brookline Realty & Inv. Corp.,* 10 Mass. App. Ct. 63, 66 (1980).

Nevertheless, within cautious limits, an original action may lie to test whether an agency has exceeded its powers or "jurisdiction" or is aiming to do so, and to this extent the "final decision" or "exhaustion" principle may be pushed aside. Caution is indeed called for, as the history of administrative law shows, because attacks, mounted ostensibly under the banner of "jurisdiction," have on occasion been used to delay, if not to abort, legitimate agency undertakings. Decisions in this Commonwealth have allowed the rather anomalous original action in some situations where there was a credible claim that an agency was going beyond its bounds, the question appeared to be a general one whose settlement might be of value to many in addition to the immediate parties, and the case involved no or little fact finding (as where it reduced to statutory interpretation on agreed facts). See *Massachusetts Bay Transp. Authy.* v. *Labor Relations Commn.,* 356 Mass. 563, 564-565 (1970); *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination,* 364 Mass. 444, 450-452 (1973), and cases cited; *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.,* 376 Mass. 359, 369 (1978). Cf. *Murphy* v. *Administrator of the Div. of Personnel Admn.,* 377 Mass. 217, 220-222 (1979). Although we have misgivings whether the present claim can be ranked as credible, we cannot say that the judge committed error in entertaining the action.

2. There is no express provision for reconsideration of a board decision in the statute, by-law, or regulation, nor is there any provision on this matter in c. 30A.[8] Yet, where the board

---

[8] By G. L. c. 30A, § 9, inserted by St. 1978, c. 60, the Commissioner of Administration may promulgate standard rules of adjudicatory procedure

by statute, by-law, and its own regulation has expansive regulatory responsibility over a subject, with considerable leeway regarding substance and procedure,[9] and where, moreover, it deals on an adjudicatory basis with many ex parte applications requiring prompt action, the possibilities of misprisions are so obvious that a power to take corrective steps after decision would seem necessary and therefore implicit; and especially so, for instances where fraud or other overreaching is suspected.[10]

To be sharply distinguished are questions of agency power to reconsider an adjudicatory decision in order to apply fresh judgment or an altered substantive policy to an otherwise closed

---

which are to apply to "all [S]tate agencies within the executive offices," except such of those agencies as have secured the Commissioner's approval of additional or substitute rules for their own adjudicatory proceedings. On this appeal, evidently for the first time, the plaintiff argues that the standard rules apply to the board. Without reaching that question, we observe that the standard rules pointed to, 801 Code Mass. Regs. § 1.01(10)(o) & (p) (1979), appear to be irrelevant to our case. Section 1.01(10)(o) deals with the introduction of new evidence before a tentative or final decision is issued. Section 1.01(10)(p) says reconsideration may be obtained by a party upon motion made within ten days of the issuance of a decision. There is no attempt here, we suggest, to deal with the problem where a party is suspected of having defrauded the tribunal — a situation seldom likely to arise so quickly. Compare Mass.R.Civ.P. 59(b), 365 Mass. 827 (1974) (time for new trial motion), with 60(b), 365 Mass. 828 (1974) (time for motion for relief from judgment). And see our discussion below of the time factor.

[9] The statute, St. 1970, c. 843, § 2, authorizes the board to regulate rents, housing standards, and evictions of tenants, and to exercise "all powers necessary or convenient to perform its functions." By-law 38, § 4(d), empowers the board to "make such studies and investigations, conduct such hearings, and obtain such information as is deemed necessary" to its regulatory, administrative, or enforcement functions; § 4(e) adds the power to issue orders and promulgate regulations. With a few enumerated exceptions, the board's discretion in removal permit proceedings is wide, as long as it considers the benefits and detriments to the persons it is charged to protect, particularly families of low and moderate income and elderly people on fixed incomes. See by-law 38, § 9A(b), (c), (d), (g), (h); regulation 29, § 6.

[10] We center our discussion on reopenings on account of suspected fraud, but we do not mean to imply that that is the only basis on which the board or comparable agencies may initiate reconsiderations. Compare authorities cited in notes 12-13, *infra.*

proceeding. Such are the cases on which the plaintiff seeks to rely.[11] We deal here with a supposed imposition on the board that would result in a tainted decision.

It is not in the least astonishing that courts have found many times that a power to reopen proceedings on grounds of fraud is inherent in the administrative process and needs no specific authorization by statute or regulation. See *Baggett Transp. Co.* v. *United States*, 206 F. Supp. 835, 842 (N.D. Ala. 1962); *Redding* v. *County Commrs. for Prince George's County*, 263 Md. 94, 111 (1971); *Anchor Cas. Co.* v. *Bongards Co-op. Creamery Assn.*, 253 Minn. 101, 104-107 (1958); *Hall* v. *Seattle*, 24 Wash. App. 357, 361-363 (1979).[12] Other decisions look to some authorization for the reopening of final agency action, but tend to make an exception for fraud or to read vague, liberal grants of adjudicatory power to include inferentially the authority to reopen on account of error. See *Kephart* v. *Wilson*, 219 F. Supp. 801, 823-828 (W.D. Tex. 1963), aff'd on other grounds, 350 F.2d 669 (5th Cir. 1965); *Modine Mfg. Co.* v. *Pollution Control Bd.*, 40 Ill. App. 3d 498, 501 (1976).[13] Professor Davis appears to assume that the absence

[11] Changes in policy or judgment: *United States* v. *Seatrain Lines, Inc.*, 329 U.S. 424, 428-429 (1947); *Dale Bland Trucking, Inc.* v. *Calcar Quarries, Inc.*, 417 N.E. 2d 1157, 1159 (Ind. App. 1981). See also *Boston Edison Co.* v. *FPC*, 557 F.2d 845, 849 (D.C. Cir.), cert. denied, 434 U.S. 956 (1977); Davis, Administrative Law § 18.09, at 370 (3d ed. 1972). Also cited is *CAB* v. *Delta Air Lines, Inc.*, 367 U.S. 316, 322-323, 329 (1961), involving procedural limits imposed expressly by statute.

[12] See generally *Spanish Intl. Bdcst. Co.* v. *FCC*, 385 F.2d 615, 621 (D.C. Cir. 1967); *Trujillo* v. *General Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980); *Dawson* v. *Merit Sys. Protection Bd.*, 712 F.2d 264, 267 (7th Cir. 1983); *McAllister* v. *United States*, 3 Cl. Ct. 394, 398 (1983); *In re Bray*, 97 Cal. App. 3d 506, 511 (1979); *Duvin* v. *New Jersey*, 76 N.J. 203, 207-208 (1978). Cf. *American Trucking Assns.* v. *Frisco Transp. Co.*, 358 U.S. 133, 145 (1958); *Boesche* v. *Udall*, 373 U.S. 472, 475-476, 480-481, 484 (1963); *Greater Boston Television Corp.* v. *FCC*, 463 F.2d 268, 282-283 (D.C. Cir. 1971), cert. denied, 406 U.S. 950 (1972); *Greene County Planning Bd.* v. *FPC*, 559 F.2d 1227, 1233 (2d Cir. 1976), cert. denied, 434 U.S. 1086 (1978).

[13] For the effects of varying statutory arrangements on reopenings for reasons other than fraud or the like, see *Magma Copper Co.* v. *Arizona State*

of express authorization for reopening administrative proceedings does not preclude it; on that basis he has identified the factors that agencies ought to consider in deciding in given situations whether they should, upon reopening, undo earlier decisions. Two of the factors mentioned are of interest also on the anterior question of the power to reopen: "the degree of care or haste in making the earlier decision, and the general equities of each problem." Davis, Administrative Law Text § 18.09, at 370 (3d ed. 1972).[14] As noted, under the practice indicated by the present record, the board, possibly for reasons of expedition, acted altogether or mainly on the faith of the presentation made by the owner, without — so far as appears — any serious independent check. That argues for a right to take a backward look, and the equities in cases of fraud argue to the same conclusion.[15] We add, as a final consideration, that if courts with their elaborate formal procedures require an avenue for "relief from judgment or order," among other reasons, for "fraud . . . , misrepresentation, or other misconduct of an adverse party" (see Mass.R.Civ.P. 60[b], 365 Mass. 828 [1974]), administrative agencies with their generally looser, less stringent procedures need such a backup even more.[16]

---

*Tax Commn.*, 67 Ariz. 77, 81-86 (1948); *People ex rel. Olin Corp.* v. *Department of Labor*, 95 Ill. App. 3d 1108, 1112 (1981); *Franklin* v. *Iowa Dept. of Job Serv.*, 277 N.W.2d 877 (Iowa 1979); *Phelps* v. *Sallee*, 529 S.W.2d 361, 365 (Ky. 1975). These decisions, in denying reopenings, suggest that the agencies do not have inherent or implied powers, or such a power to reconsider a final decision; but the decisions rest on perceived limitations in the respective statutory schemes and, again, do not involve fraud. Cf. *Suryan* v. *Alaska Industrial Bd.*, 12 Alaska 571, 573-574 (1950).

[14] Compare his fuller discussion in Davis, Administrative Law Treatise § 18.09, at 606-611 (1958).

[15] As an example of a situation in which institutional haste in the original hearing warrants reconsideration, Professor Davis refers to the operations of the New York City rent commission just following its creation, in which there was pressure from a heavy caseload of applications, a limited staff had to make quick decisions, and the agency had to depend on information tendered by interested parties. Davis, Administrative Law Treatise § 18.09, at 608 (1958).

[16] The plaintiff's claim to protection on grounds of res judicata is misplaced. It has not been supposed that rule 60(b) offends against principles of res judicata. See 11 Wright & Miller, Federal Practice and Procedures §§ 2852, at 143-144, & 2857 (1973).

To answer other points urged by the plaintiff. He argues that, perhaps peculiarly in a case where fraud is or may be involved, the board, if it has any recourse, must proceed as a complainant in a court, and not through reopening its own proceedings. The usual appearance of an agency as a plaintiff in court is to enforce orders eventuating from its administrative proceedings. See G. L. c. 30A, § 12(5); St. 1970, c. 843, §§ 2, 5(*b*); by-law 38, §§ 10(b), 12(c); regulation 29, § 11(b). If the board has any capacity for pursuing a fraud case by an original court action, a question that need not be decided here, we would not see this as necessarily excluding the alternative of a reopening of the agency proceeding, which seems to us to be more suitable in any event.[17] Of course the fact that fraud may have ultimate penal consequences, see by-law 38, § 12; regulation 29, § 11(a), (b), is irrelevant to the issue at bar.[18]

Assuming that reopening by the board is available in cases of suspected fraud, the plaintiff says it should be initiated within ten days of the ruling to be reexamined, this period corresponding to the time limited by c. 30A, § 14, for initiating judicial review of a final decision of an agency. We do not see a convincing connection: as well might one argue that the rule 60(b) period should correspond with the period for taking an appeal.[19] The plaintiff's suggested period would be unfortu-

[17] See in this connection the reference to the board's power to "conduct such hearings, and obtain such information as is deemed necessary . . . in administering and enforcing" its orders. By-law 38, § 4(d), mentioned also at note 9, *supra*. See also *Modine Mfg. Co.* v. *Pollution Control Bd.*, 40 Ill. App. 3d at 501. Cf. *Best* v. *Humboldt Placer Mining Co.*, 371 U.S. 334, 339-340 (1963).

[18] The plaintiff suggests in argument that this is not a case of reopening on suspicion of fraud (although that is how the board and the judge see it) because "at most" an owner had to represent that the purchaser named in the purchase and sale agreement was a tenant at the time. The plaintiff seems to intimate that it would not matter what the owner knew or could surmise about whether the named purchaser intended to remain in occupancy, was a stand-in for an outsider who was the real, beneficial purchaser, etc. These are matters for submission to the board at the renewed hearing, not a basis for aborting the hearing.

[19] Compare *CAB* v. *Delta Air Lines*, 367 U.S. 316, 326-327 (1961), with *Dale Bland Trucking, Inc.* v. *Calcar Quarries, Inc.*, 417 N.E.2d 1157, 1160 (Ind. App. 1981), and cases cited.

nate as a practical matter for dealing with fraud cases. We agree — and the cases suggest — that it may be desirable to prescribe reasonable time limits for reopenings.[20] The time intervals in the present case, ranging from two to ten months from the dates of the several decisions granting removals, seem not unreasonable; compare the limit of one year allowed for fraud under rule 60(b).[21] We suggest that the question of time limits should be thought of as initially for decision (or adoption of regulations) by the agency itself. Cf. *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.*, 376 Mass. at 369.

Last, the plaintiff urges that the undoing of removals earlier allowed could involve prejudice to interests innocently acquired and relied on. Neither the record nor the arguments of counsel give us an insight into the legal or practical consequences of a finding of fraud; such questions must abide the event.

We observe, in conclusion, that the board has been scrupulous to say that, short of reopening and continuing the adjudicatory proceedings, it has no adequate basis for an opinion whether the plaintiff was in fact guilty of any misconduct. If misconduct should be found, the final decision of the board concluding the reopened adjudicatory proceeding will be subject to judicial review on the part of the present plaintiff.

The judgment appealed from is affirmed. Since the action fails, the protective order striking the plaintiff's interrogatories is also affirmed.

*So ordered.*

---

[20] See *Dawson* v. *Merit Sys. Protection Bd.*, 712 F.2d 264, 267 (7th Cir. 1983); *Anchor Gas Co.* v. *Bongards Co-op. Creamery Assn.*, 253 Minn. at 106; *Skulski* v. *Nolan*, 68 N.J. 179, 196 (1975). But see *McAllister* v. *United States*, 3 Cl. Ct. 394, 398 (1983).

[21] Rule 60(b)(3) speaks of "fraud," etc., "or other misconduct of an adverse party" and sets a "reasonable time" but not more than one year for the motion to reopen. It is noteworthy, however, that "[t]his rule does not limit the power of a court to entertain an independent action . . . to set aside a judgment for fraud upon the court." In the latter case, there is no definite limit of time; equitable notions of laches or the like would control. See 7 Moore's Federal Practice par. 60.33 (2d ed. 1983).