Whitehead, J.
Plaintiff Walcott Valley Townhouse Condominium Association, Inc. (‘Walcott”) filed this action on behalf of sixty-six unit owners against defendants Town of Hopkinton (“the Town”) and Maureen L. Dwinnell (“DwinneU”), the Town’s Treasurer and Tax Collector, after Dwinnell refused to refund or credit the unit owners a portion of a tax assessment they paid, but which the Town later agreed to abate. Walcott seeks a refund or credit of $675.00 for each unit owner, plus 8% interest from April, 1991, to date, and costs and reasonable attorney’s fees. The defendants have moved for summary judgment pursuant to Mass.R.Civ.P. 56(c). Walcott has filed a cross-motion for summary judgment.
BACKGROUND
On February 2, 1990, Walcott’s sixty-six unit owners each received a betterment tax assessment for the sewer line that passes through Walcott Valley. The assessment was in the amount of $4,000.00 per unit. The unit owners commenced payment of the assessments , but promptly took action to obtain abatements.
Prior to filing abatement applications, Walcott initiated a dialogue with the Board in an attempt to convince the Board to afford Walcott some form of relief from the betterment assessments. By letter dated April 3, 1990, counsel for Walcott wrote to the Board with regard to the unit owners’ planned abatement applications. At its April 3,1990 meeting, the Board indicated that it would “come up with a decision within (30) days.”
At its April 17, 1990 meeting, the Board considered how it would pay for Walcott’s requested abatements. The minutes of the meeting indicate that Commissioner John Deneen (“Deneen”) suggested that Stephen Fant (“Fant”), Superintendent of the Sewer Department, determine a figure, draw up a document and present it to the Board for a vote. In the interim, on April 30, 1990, the unit owners formally filed applications with the Town’s Board of Water and Sewer Commissioners (“the Board"), requesting abatement of the assessments.
At the Board’s May 1, 1990 meeting, it discussed and unanimously voted to accept one of Fant’s proposals. By letter dated May 21, 1990, Fant wrote to Richard Loughlin (“Loughlin”), President of the Walcott Valley Condominium Association, to request certain information needed to proceed with the abatement request. Fant also requested a meeting on the abatement issue. Loughlin provided the requested invoices in September, 1990.
At the Board’s October 16, 1990 meeting, Fant submitted his recommendation on the abatement applications. He recommended a total abatement of $44,212.28. The minutes of the meeting indicate that after discussion, “the Board advised [Fant] to talk to the Condo Association before approval [would be] given.” Additionally, between June and October, 1990, Walcott, the Board, and Dwinnell, all sought and received advice from Harry Grossman, Chief of the Property Tax Bureau of the Massachusetts Department of Revenue.
By letter dated December 5, 1990, counsel for Walcott wrote to Fant to reiterate its basis for requesting the abatements. By letter dated December 10, 1990, Fant responded to that letter, thanking Walcott for providing helpful information, and informing it that a decision would be made “in a week or two.” Fant also wrote to Loughlin, as a follow-up to their December 5, 1990 telephone conversation, and informed Loughlin that the Board was still undecided on the abatement requests.
By letter dated January 8, 1991, counsel for Walcott wrote to Fant to “again urge the Sewer Commission to grant the requested abatements to the residents of Walcott Valley Townhouse Condominiums.” At the Board’s January 22,1991 meeting, itrmanimously voted to grant Walcott’s abatement request in the amount of $675.00 for each of the 66 unit owners. By letter dated February 1, 1991, counsel for Walcott thanked Fant and the Board for granting the abatements.
By letter dated April 10, 1991, counsel for Walcott informed Fant that despite the vote to grant the abatements, the unit owners had yet to receive formal notification. On April 30, 1991, the Board notified the unit owners that it had granted the abatements.
On April 30, 1991, the unit owners made demand on the Town and Dwinnell seeking either a reimbursement or credit of the $675.00 abated to each unit owner. They received no response. The unit owners made a second request on July 1, 1991, but again received no response. Walcott filed suit on behalf of the unit owners on April 20, 1993.
DISCUSSION
I. Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass. R. Civ. P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. See Dawes, supra at 553.
*354 II. The Statutory Scheme
In their memorandum, the defendants asserted that this action is time barred by the provisions of G.L. c. 80, §10A, which provides:
If the board with which a petition for the abatement of an assessment has been duly filed in accordance with the provisions of section five fails to act upon said petition within Jour months of the date of the filing of such petition, the petition shall be deemed to be denied, and the petitioner shall have the right within sixty days after the expiration of said four months to appeal as if the board had in fact denied the said petition; provided, that if the assessment has been paid, no appeal shall be taken after the expiration of ten months from the time of payment. (Emphasis added).
The defendants appeared to view the action as one challenging the denial of an abatement, and hence subject to the four month or ten month periods of limitation contained in §10A.
However, this action is not one challenging the denial of an abatement. It is an action to compel payment of an abatement already granted. In response to the court’s observation of that fact, the defendants, at oral argument, asserted that if the action is, in fact, one to compel payment of an already granted abatement, the abatement is void. They asserted that, by operation of §10A, the abatement applications were deemed denied on August 30, 1989, exactly four months after they were filed. See §10A, supra.
The question thus presented is: Can a Board of Assessors, on its own, reverse a denial of an abatement which has been attributed to it by operation of G.L. c. 80, §10A? The court concludes in the affirmative.
In interpreting a statute, the court must seek to effectuate “the intent of the Legislature, as evidenced by the language used, and considering the purposes and remedies intended to be advanced.” Saccone v. State Ethics Commission, 395 Mass. 326, 328 (1985). The appeal procedures of Chapter 80 and, in particular the “deeming” language of §10A are set forth for the benefit of the parly seeking an abatement. It is apparent that the General Court promulgated §10A as a safeguard to ensure that an individual’s appellate rights would ripen after a period of inaction by a public authority. However, nowhere in §10A does this court find evidence of a legislative intent to render a denial of relief, effected by operation of law, conclusive as against a public authority which has subsequently concluded that an award of relief is merited. This is particularly so in circumstances such as those presented here, where the public authoriiy is engaged in an ongoing constructive dialogue with the taxpayer throughout the period during which the petition has been pending.
Generally, where there are no express or perceived statutory limitations, administrative agencies possess an inherent power to reconsider their decisions. Malone v. Civil Service Commission, 1995 WL 68582 (Mass.App.Ct.) (the degree of care or haste in making the earlier decision and the general equities of each problem are relevant to deciding whether to exercise the power to reopen proceedings) (citation omitted); Stowe v. Bologna, 32 Mass.App.Ct. 612, 615 (1992), aff'd 415 Mass. 20 (1993); Aronson v. Brookline Rent Control Board, 19 Mass.App.Ct. 700, 703-706 (1985); Duvin v. State, 76 N.J. 203, 207 (1978) (in the absence of legislative restriction, an administrative agency may reopen its proceedings or modify prior orders, provided the respondent has acted with reasonable diligence, and only upon a showing of good cause). While the court is not faced with an affirmative error, it follows that a governmental body must also be presumed to have the authority to correct errors which it has allowed to occur through inaction — in effect, passive errors.
There are practical benefits to such a rule. If, in the context of this case, the court were to adopt the defendants’ proposed interpretation of the reach of §10A, it would put the party petitioning for an abatement in the anomalous situation of having constructive, although at times, protracted, dialogue with the public authority eradicated by operation of law. This is so regardless of the complexity of the matter at hand and the wishes of the public authority. By the defendant’s proposed construction of §10A, Walcott should have cut off negotiations in mid-stride and begun the appellate process, even if at the doorstep of abatement approval. If instead the Board is deemed to have been permitted to thoroughly review and reverse a decision which has been attributed to it by operation of law, unnecessary litigation is avoided, and the Town is saved needless expense. While the power to “reopen” proceedings must be used sparingly, the unique factual circumstances of this case provide good grounds for doing so.
This is not to say that, ultimately, had the petitions been expressly denied instead of granted on April 22, 1991, the period for an appeal of that denial would have commenced as of that date. In those circumstances, the subsequent denial would have simply been a confirmation of the earlier denial which would have accrued by operation of law.
III. Proper Party
The defendants’ also contend that Walcott is not entitled to prosecute this action on behalf of the unit owners. This argument has merit. Nevertheless, the court feels that the proper course of action is not to dismiss the action, but to afford the” plaintiff the opportunity to amend the complaint to substitute for the condominium association the individual unit owners, who are the actual taxpayers. The court therefore withholds action on this matter. Once the complaint is amended, the court is inclined to enter summary judgment for the individual taxpayers.