WAYNE E. COVELL vs. DEPARTMENT OF SOCIAL SERVICES.

No. 95-P-1740.

Barnstable. January 16, 1997. - April 3, 1997.

Present: WARNER, C.J., KAPLAN, & IRELAND, JJ.

*Superior Court,* Jurisdiction. *Administrative Law,* Agency, Proceedings before agency, Rehearing. *Jurisdiction,* Administrative matter. *Department of Social Services.*

This court deferred action on an appeal challenging a determination by a hearing officer of the Department of Social Services that there was reasonable cause to believe a certain child had been sexually abused, as a consequence of which the alleged abuser's name was listed on the department's registry of alleged perpetrators, pending the department's action on an application to reopen the administrative hearing for the presentation of evidence that the alleged abuser had been found not guilty of the acts alleged in a related criminal proceeding. [433-434]

CIVIL ACTION commenced in the Superior Court Department on June 17, 1994.

The case was heard by *John A. Tierney,* J.

*James R. McMahon, Jr.,* for the plaintiff.

KAPLAN, J. On October 12, 1993, Helen Voisin,[1] then almost fourteen years old, told her mother and a "mandated reporter" that she had been abused by her stepfather, Wayne E. Covell, a year and a half earlier. At that time Helen's mother had been disabled by her pregnancy from assisting her husband at his general store in Bournedale, and Helen, after school hours, was helping out. According to Helen, when the store closed Helen and Covell would sit together and watch television. On three or four occasions, Helen said, Covell fondled her breasts and put his hand down her pants.

Upon a G. L. c. 119, § 51A, report of October 14, 1993, the Department of Social Services (DSS) detailed a social

[1]Pseudonym.

worker as investigator to look into these allegations. See G. L. c. 119, § 51B. The investigator interviewed Helen and Helen's mother. The investigator also interviewed Covell. Covell denied the allegations and said that his occasional nonsexual embracing of Helen might have been exaggerated or misunderstood; he also suggested that his wife, with whom he was having difficulties, might have encouraged Helen's allegations.[2] On October 19, 1993, the investigator supported the § 51A report, finding reasonable cause to believe that Helen had been sexually abused. Thereupon Covell was listed on the department's registry of alleged perpetrators, to remain for a period of seventy-five years.[3]

Notified of the investigator's finding on December 13, 1993, Covell requested administrative review. The administrative hearing occurred on March 17, 1994, see 110 Code Mass. Regs. §§ 10.06(8)-(9) (1993). It evidently consisted of direct and cross questioning of Covell; neither Helen nor her mother was present. The hearing officer in a report of May 13, 1994, ruled against Covell.

The report was received by Covell on May 16, 1994. In response he commenced an action in Superior Court, Barnstable County, seeking judicial review of the departmental decision under the Administrative Procedure Act, G. L. c. 30A, § 14. His complaint was "entered" on the docket on June 17, 1994, and stamped "Filed June 17, 1994."[4] As its answer, the department submitted the administrative record. The judge, upon consideration of the record, entered a judgment on findings by the court on June 1, 1995, holding that the allegations of wrongdoing were supported by substantial evidence. See G. L. c. 30A, § 14(7)(e). Covell appealed to this court from the judgment.

The allegations against Covell had been reported to the district attorney of Barnstable County pursuant to G. L. c. 119, § 51(B)(4). Trial in District Court on three counts of

---

[2]The wife secured an order under G. L. c. 209A in effect excluding Covell from the household.

[3]The registry was created by G. L. c. 18B, § 7b, and maintained according to G. L. c. 119, § 51F; 110 Code Mass. Regs. §§ 4.33, 4.36-4.38 (1993).

[4]Counsel for Covell believes he delivered his complaint to the clerk's office on June 13, 1994, the date subscribed on the complaint, which would suggest that there may have been a four-day delay in "entering" and "filing." (The Superior Court judge wrote that the complaint was filed on July 6, 1994; this seems without basis.)

indecent assault and battery on a child under fourteen (G. L. c. 265, § 13B) took place on July 27-28, 1995. Helen and her mother testified for the Commonwealth, Covell for the defense. The jury of six acquitted.

In his brief as appellant in this court, Covell referred to the acquittal. Reacting to this fact, counsel for DSS wrote to Covell's counsel on April 30, 1996, "offering, on behalf of the agency, to reopen the administrative hearing so that your client may present evidence regarding his acquittal." Following is the relevant passage of the letter:

> "My main purpose in calling, however, was to discuss the representation in your brief that Mr. Covell was acquitted of the criminal charges after a trial at which the child testified. As a practitioner with many years of experience, you must know that that information, which was not presented to the agency at the administrative hearing (or to the superior court), is not properly put before the Appeals Court in your brief. At the same time, as a lawyer with much experience in the Appeals Court, I know the information will be of interest to the Court and very well may motivate the panel to remand the case to the agency for consideration of additional evidence regarding the acquittal. See, e.g. G. L. c. 30A, § 14(6). Accordingly, I am offering, on behalf of the agency, to reopen the administrative hearing so that your client may present evidence regarding his acquittal."

Counsel for DSS added that meantime she was requesting an enlargement of time to file her brief.

Rather surprisingly, counsel for DSS a month later, on May 30, 1996, moved in this court to dismiss the appeal on jurisdictional grounds and stated that DSS would not file a brief on the merits. Apparently someone in DSS had been counting days. If one accepts that the Superior Court action was "commenced" by "filing such complaint . . . with such clerk" on June 17, then thirty-two days had passed after Covell's receipt of the final decision of the department, which

exceeded by two days the thirty days prescribed for starting such an action.[5]

On August 26, 1996, Covell's counsel wrote to DSS counsel "prior to filing in Court" (i.e., before filing his motion in this court to remand to the department under G. L. c. 30A, § 14[6]), asking that the department "reopen its Administrative Hearing so that Mr. Covell may present this additional evidence [the acquittal] to the Department." The response of DSS counsel, September 12, 1996, was far from counsel's sunny earlier offer to reopen the administrative hearing. Counsel said the Superior Court had acted without "subject matter jurisdiction" so there was no valid c. 30A, § 14, proceeding pending and the department could not accept additional evidence under § 14(6). But, said counsel, if the department were in a position to evaluate the information, "the 'beyond a reasonable doubt' standard employed in a criminal proceeding far exceeds the 'reasonable cause to believe' standard employed by the agency." Subjoined was a gratuitous statement expounding the values of the registry.

Thus rebuffed, Covell on October 22, 1996, filed in this court an opposition to DSS's motion to dismiss the appeal and a motion under § 14(6) to remand the matter to the department to receive additional evidence.

1. *On the motion to dismiss the appeal in this court.* Although Covell may not agree,[6] we accept that the Superior Court action came two days late. DSS says the slip left the

---

[5]General Laws c. 30A, § 14(1), provides in part: "The action shall . . . be commenced in the court within thirty days after receipt of notice of the final decision of the agency or if a petition for rehearing has been timely filed with the agency, within thirty days after receipt of notice of agency denial of such petition for rehearing. Upon application made within the thirty-day period or any extension thereof, the court may for good cause shown extend the time."

Mass.R.Civ.P. 3, as amended, 385 Mass. 1215 (1982), states in part: "A civil action is commenced by . . . (2) filing such complaint and an entry fee with such clerk . . . . "

[6]See note 4 *supra.* If in fact Covell's counsel delivered his Superior Court complaint to the clerk's office on Monday, June 13, as counsel believes he did, then it may plausibly be argued that the action should be considered commenced on that date, even though the clerk delayed the actual filing until Friday, June 17. Compare *Standard Register Co. v. Bolton-Emerson, Inc.,* 35 Mass. App. Ct. 570, 572 (1993). An attempt to litigate the facts on the point at this stage is likely to be inconclusive as well as tedious and so we accept the stamped filing date of June 17.

Superior Court without "subject matter jurisdiction," and this rendered nugatory all that followed including the judge's decision and the appeal therefrom.

There was no failure of "subject matter jurisdiction" if that term is used with its basic and well recognized signification, as reflected in Restatement (Second) of Judgments § 11 (1982): "*Subject Matter Jurisdiction.* A judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action." The first Restatement illustrated such lack of authority in a homely way: "[A] judgment rendered by a justice of the peace is void if under the law of the State such justices are not empowered to deal with the subject matter of the action; as, for example, where the action is one for tort and justices of the peace are given no power except in actions of contract." Restatement of Judgments § 7 comment b (1942). Our case of an untimely complaint in a type of action committed to the Superior Court does not conform to the § 11 model.

This, however, does not take us to the end of the line, for courts might choose to visit the dire consequences that attach to lack of subject matter jurisdiction upon situations distant from the model. Have our courts meant to do so in the present situation of late filing?

The following speaks for an affirmative answer. The cases assert with emphasis that compliance with the time provision at bar is important for the health of the system: the "attempted institution of an appeal seeking judicial review of an administrative decision after expiration of the period limited by statute or rule" has been cited as "[a] prime example" of "some errors or omissions . . . seen on their face to be so repugnant to the procedural scheme . . . as to call for dismissal of the appeal." *Schulte* v. *Director of the Div. of Employment Security,* 369 Mass. 74, 79 (1975).

So also there are repeated statements in the books that commencing the c. 30A, § 14, action on time is a "jurisdictional" requirement. See *Friedman* v. *Board of Registration in Medicine,* 414 Mass. 663, 666 (1993); *Flynn* v. *Contributory Retirement Appeal Bd.,* 17 Mass. App. Ct. 668, 669 (1984); *Wolbach* v. *Beckett,* 20 Mass. App. Ct. 302, 308 (1985); *Board of Appeals of Rockport* v. *DeCarolis,* 32 Mass. Ap. Ct. 348, 352 (1992); *Stowe* v. *Bologna,* 32 Mass. App. Ct. 612, 615 n.7

(1992), *S.C.*, 415 Mass. 20 (1993). On occasion the statement has been associated with a reference to Mass.R.Civ.P. 12(h)(3), 365 Mass. 757 (1974).[7] See *Flynn, supra* at 670 n.3.

On the other hand, there is reason to doubt that there is really a purpose absolutely to equate in consequences a delay in filing with an absence of authority in a court. What has come about is explained shortly thus: "There is a strong tendency in procedural law to treat various kinds of serious procedural errors as defects in subject matter jurisdiction. This is because characterizing a court's departure in exercising authority as 'jurisdictional' permits an objection to the departure to be taken belatedly. This, in turn, permits a serious blunder to be remedied despite tardy objection." Restatement (Second) of Judgments § 11 comment e.

Considering this likely provenience of the invocation of "jurisdiction" in cases having nothing to do with the authority of a court to adjudicate, we may find some ground for suggesting that the time bar herein should not be held absolute but should rather admit of rare, exceptional instances in which a c. 30A, § 14, complaint may survive a delayed filing. And the present case may possibly qualify as such an instance. DSS awoke to Covell's late commencement of the court action only after the judge had dealt with it and concluded it by judgment and after an appeal to this court was under way. It may be fairly said that DSS's delayed reaction matched or overmatched Covell's delay. Through dismissal of the appeal DSS would bar consideration of Covell's acquittal of the criminal charges which DSS had frankly and commendably invited for administrative consideration in a reopened hearing. A further special aspect: although the procedure starting with a § 51A report is classified nominally as civil, it verges toward the criminal, and especially so in regard to the registry. In criminal matters there is an understandable reluctance to abort defendants' recourse to remedies because of missteps in meeting prescriptions of time.[8]

Happily, as we think, the question arising upon the motion to dismiss the appeal in this court need not be decided here

[7] "Whenever it appears by suggestion of a party or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

[8] The statements in *Schulte* and other cases above cited are general in form and do not consider the possible significance of extraordinary factors.

and now.[9] An avenue is open to Covell and DSS, free of the "jurisdictional" tangle, through which the administrative proceeding may be renewed and decision perhaps attained on the merits. This seems to us peculiarly appropriate to the occasion.

2. *A preferred route.* The case of *Aronson* v. *Brookline Rent Control Bd.*, 19 Mass. App. Ct. 700, 703-706 (1985), teaches that agencies have inherent power to reopen their concluded proceedings in compelling situations as justice may require. *Aronson* was a case where the agency acted to consider an allegation that a party had committed a fraud affecting the earlier agency decision, but *Aronson* acknowledges, as do later cases, that other kinds of claims might rightly impel an agency to allow reopening. See *Aronson* at 704 n.10; *Stowe*, 32 Mass. App. Ct. at 616; *Malone* v. *Civil Service Commn.*, 38 Mass. App. Ct. 149, 152 n.11 (1995). It is evident that the power to reopen should be exercised by an agency with due circumspection — "sparingly" as the cases say. *Stowe* at 616; *Malone* at 152. So also applications for such relief can hardly be entertained without limit of time. Analogy to Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), has been proposed. See *Stowe* at 618. The particular basis for reopening in the present case appears to fit only category (6) of rule 60(b) which looks to a "reasonable" time. The department may well accept that Covell's letter of August 26, 1996, taken in the light of DSS's offer, was in effect an application for reopening, and that, all things considered, it came within a reasonable time. There is comfort in the thought that this approach would conform to DSS's own wish as expressed before it was transfixed by jurisdictional temptations.

DSS referred latterly to a difference in burdens of proof as between an agency proceeding and a criminal prosecution. The difference does not necessarily foretell a negative result for Covell upon reopening (DSS must have agreed with this proposition when it made the offer). Granting the difference, the department would still be interested in the circumstances and content of the criminal prosecution, including the fact, pressed by Covell, that it was the one occasion when the accusers faced the accused on the issue of abuse.

[9]We are actuated in some degree by the fact that neither party has briefed the problem that underlies the motion to dismiss the appeal and a decision of the motion could by extension have consequences for other statutory systems beyond c. 30A, § 14.

Finally, we have no opinion or ground for an opinion whether Covell deserves to have his name struck from the registry.

Action upon the appeal herein will be deferred to allow the department to deal as it may be advised with Covell's application to reopen the administrative proceeding.

*So ordered.*